**Linda P. RICCO, Appellant**

v.

**Victor J. NOVITSKI, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 11, 2005.
Filed April 5, 2005.
Reargument Denied May 31, 2005.

Susan M. Hill, Bloomsburg, for appellant.

Clinton C. Hummel, Bloomsburg, for appellee.

Before: BENDER, GANTMAN, and JOHNSON, JJ.

GANTMAN, J.

¶1 Appellant, Linda P. Ricco ("Mother"), asks us to review the decision of the Columbia County Court of Common Pleas, which released Appellee, Victor J. Novitski ("Father"), from all child support obligation to his disabled, minor child, N.J.N. ("Child"). Upon a thorough review of the record and the applicable law, we hold the trial court erred when it deviated from the Support Guidelines and determined Father had no further child support obligation because of Child's Special Needs Disability Trust. Accordingly, we reverse and remand the matter to the Domestic Relations Officer to recalculate Father's support obligation in accordance with our directions.[1]

¶2 The relevant facts and procedural history of this appeal are as follows. Child is profoundly mentally and physically disabled. He was born on August 21, 1986. The parties also have one older child, who is emancipated. The parties separated when Child was about three months old. Since that time, Mother has been solely responsible for Child's care and upbringing. Father has had no actual involvement with Child for several years. In 1999, Mother settled a medical malpractice litigation action on behalf of herself and Child. Money from Child's award settlement was placed in a Special Needs Disability Trust ("Trust"), established for the benefit of Child to supplement the primary sources of support to which he would otherwise be entitled.

¶3 The Trust, managed by a banking institution, paid for the design and construction of a specially-adapted house on real estate where Mother and Child reside. The Trust also paid $23,000.00 to furnish the home, including a master bedroom for Mother and a bedroom for Child's sibling. The Trust has authorized payments for a security system, landscaping, household costs such as pest control, snow removal, and other miscellaneous costs relating to home maintenance. The Trust purchased a specially-equipped automobile for Child, and pays for automobile insurance, maintenance and registration, although Mother holds title to the vehicle and is able to use it for her own purposes. Additionally, the Trust provides Mother with $500.00 per month to cover all necessary monthly expenses for the household, including electricity, phone, water, garbage, and clothes and entertainment for Child.

¶4 Mother is employed full time as a teacher, with an annual net income of approximately $41,000.00. Her employment pays for her health insurance and for Child's health insurance. After reviewing Mother's pay-stubs, tax returns, and other financial documentation, the Domestic Relations Officer calculated Mother's net earned monthly income as $2,474.16. The additional $500.00/month Mother receives from the Trust to help defray expenses brings Mother's total net monthly income to $2,974.16. Father is self-employed with an annual **net** income of approximately $43,000.00. His net monthly earned income is $3,588.25.

¶5 As the sole custodial parent, Mother provides exclusively for Child's care during evenings, weekends and summers. A home health-care aide arrives each morning to help Child get ready for school, and spends several hours in the afternoon with Child until Mother returns from work to care for Child. This service has been paid for by Mother's insurance, and Medical Assistance if needed, and will continue un-

1. Mother also appeals from the court's June 18, 2004 order concerning the handling of a credit balance of $2,348.68. Due to our disposition of this appeal, the court's June 18th order is vacated in part, solely as to the credit balance. That part of the order directing Father to pay the transcript fee of $108.00 within thirty (30) days shall remain intact.

til Child reaches age twenty-one (21). Additionally, out of her personal income, Mother pays for Child's food and activities outside the home, such as movies, dining out, and swimming at a recreational center.

¶ 6 The Domestic Relations Section initiated a petition for modification of the existing support order for Father, when the parties' older child completed high school on June 13, 2003. Following a court-ordered conference on September 18, 2003, the Domestic Relations Officer recalculated Father's monthly child support obligation for Child as follows:

### Support Guideline Calculation

| CHILD SUPPORT | Father | | Mother |
|---|---|---|---|
| Number of Dependents in this Case: | 00 | | 01 |
| Gross Monthly Income: | 3,588.25 * | | 3,426.32 |
| Less Monthly Deductions: | 0.00 | | 952.16 |
| Net Monthly Income: | 3,588.25 | | 2,474.16 |
| Combined Total Monthly Net Income: | | 6,062.41 | |
| | | * * * | |
| Basic Child Support Obligation: | | 1,078.00 | |
| | | * * * | |
| Net Income as Percentage of Combined Amount: | 59.19% | | 40.81% |
| Each Parent's Monthly Share of the Basic Child Support Obligation: | $ 638.07 | | $439.93 |
| | | * * * | |
| Obligor's Support Obligation: | | $ 638.07 | |

* The Domestic Relations Officer placed Father's **net** monthly income on the line designated for gross monthly income, applied no monthly deductions, and correctly calculated Father's net monthly income. Hence, the same number appears on both lines.

(Support Guidelines Calculation, 9/18/03; R.R. at 140a–141a). The Domestic Relations Officer then applied a 40% downward deviation from Father's total obligation of $638.07/month under the support guidelines, based upon consideration of the $500.00/month received by Mother's household from the Trust. The Domestic Relations Officer attributed a net monthly support obligation of $382.84 to Father. Accordingly, Father in essence received a credit of $255.23/month for the $500.00/month Mother's household received from the Trust.[2]

2. The parties' monthly support obligation, under the support guidelines, has been adjusted to reflect Mother's receipt of $500.00/month from the Trust. The adjusted support obligation of these parents for Child should be:

### Support Guideline Calculation

| CHILD SUPPORT | Father | | Mother |
|---|---|---|---|
| Number of Dependents in this Case: | 00 | | 01 |
| Gross Monthly Income: | 4,673.50 | | 3,926.32 * |
| Less Monthly Deductions: | 1,085.25 | | 952.16 |
| Net Monthly Income: | 3;588.25 | | 2,974.16 |

¶ 7 Father objected to any determination of support under the circumstances of this case. As a result, he filed a request for a hearing *de novo*, which took place on January 13, 2004, before a Special Hearing Officer. After receiving testimony, the Special Hearing Officer affirmed the support calculation on January 22, 2004. Father filed exceptions, and on May 26, 2004, the trial court sustained Father's exceptions and released him from any further support obligation, based upon its consideration of the factors permitting deviation from the support guidelines. Mother filed this timely appeal. On July 19, 2004, Mother filed a court-ordered Rule 1925(b) statement. In response, the trial court affirmed its decision in its Rule 1925(a) opinion.

¶ 8 On appeal, Mother raises the following issue for our review:

> DID THE TRIAL COURT ERR IN HOLDING THAT THE EXISTENCE OF A TRUST FOR A DISABLED CHILD RELEASES [FATHER] [FROM] ALL CHILD SUPPORT OBLIGATIONS?

(Mother's Brief at 3).

¶ 9 In child support matters, our standard of review is well settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Samii v. Samii*, 847 A.2d 691, 694 (Pa.Super.2004) (internal citations and quotations omitted).

¶ 10 Mother argues that Father owes a duty to support Child, notwithstanding the existence of the Trust. Mother directs our attention to *Sutliff v. Sutliff,* 515 Pa. 393, 528 A.2d 1318 (1987), for the principle that a parent's support obligation to a minor child is independent of the minor's assets, and if the parent has sufficient funds for support, the court should not consider the minor's funds in setting the support obligation. Mother asserts the court's decision effectively permits Father to excuse his support obligation completely in light of the Trust. Furthermore, Mother contends the trial

| | | |
|---|---|---|
| Combined Total Monthly Net Income: | 6,562.41 | |
| | * * * | |
| Basic Child Support Obligation: | 1,147.00 | |
| | * * * | |
| Net Income as Percentage of Combined Amount: | 54.68% | 45.32% |
| Each Parent's Monthly Share of the Basic Child Support Obligation: | $627.17 | $519.83 |
| | * * * | |
| Obligor's Support Obligation: | $ 627.17 | |

* Properly includes $3,426.32 earned income and the $500.00/month from the Trust to Mother's household to yield Mother's gross monthly income. The $500.00/month from the Trust should be taken into consideration **before** calculating obligor's support obligation. *See* Pa.R.C.P.1910.16-2(b), Example 2 (adding monthly stipend from trust to obligee's gross monthly income **before** finding basic support amount at combined net monthly income level under guidelines).

court decision does not promote Child's best interest. Because the Trust is being depleted in *lieu* of Father's support, Child's future needs as a disabled adult are at risk. Although the Trust assets are presently substantial, they are necessary to provide for Child's needs throughout his life as a profoundly handicapped individual who is unable to support himself. Thus, Mother concludes the trial court order should be reversed, because the court misapplied the law when it released Father from any further support obligation to Child. We agree.

¶ 11 Father responds that *Sutliff* is distinguishable from the instant case. In *Sutliff*, the Court held the father violated his fiduciary duty as custodian of his minor child's Uniform Gifts to Minors Act[3] account, when he used those funds to discharge his support obligation. Father contends that, unlike *Sutliff*, he has no control over the management of the Trust and is not using it to discharge his support obligation. Moreover, Father asserts the Trust provides and will provide for all of Child's present and future needs, to the extent that the traditional support available from Mother as the custodial parent is eliminated. Father also insists this case presents a nontraditional support issue in which the guidelines' presumptions are eliminated, because Mother as the custodial parent benefits directly from the Trust payments made on behalf of the household. Father concludes it would be unjust to require him, as the non-custodial parent, to pay any support. We disagree.

¶ 12 The duty to support one's minor child is absolute, and the purpose of child support is to promote the child's best interests. *Samii, supra* at 694. *See also Christianson v. Ely,* 575 Pa. 647, 838 A.2d 630 (2003); *Sternlicht v. Sternlicht,* 822 A.2d 732 (Pa.Super.2003), *appeal granted,* 575 Pa. 499, 837 A.2d 459 (2003).[4] A parent is liable for the support of his child who is unemancipated and eighteen years of age or younger, and may be liable for the support of his child who is eighteen years of age or older. 23 Pa.C.S.A. § 4321.[5]

¶ 13 Actions for support are generally governed by the child support guidelines, as follows:

**Rule 1910.16–1. Amount of Support. Support Guidelines.**

**(a) Applicability of the Support Guidelines.**

(1) Except as set forth in subdivision (2) below, the support guidelines set forth the amount of support which a spouse or parent should pay on the basis of both parties' net monthly incomes...and the number of persons being supported. The support of a spouse or child is a priority obligation so that a party is expected to meet this obligation by adjusting his or her other expenditures.

\* \* \*

(b) The amount of support ... to be awarded pursuant to the procedures under Rules 1910.11 and 1910.12 shall be determined in accordance with the sup-

---

**3.** *See* 20 Pa.C.S.A. §§ 5301–5310 (now commonly referred to as the Pennsylvania Uniform Transfers to Minors Act or "PUTMA," at 20 Pa.C.S.A. §§ 5301–5321).

**4.** The Pennsylvania Supreme Court granted allowance of appeal to address the issue of whether the Pennsylvania Uniform Transfers to Minors Act supersedes the common law

requirement that donative intent must exist in order to have a valid, completed *inter vivos* gift.

**5.** The child support guidelines apply in support actions for an adult dependent child. *Crawford v. Crawford,* 429 Pa.Super. 540, 633 A.2d 155 (1993).

port guidelines which consist of the guidelines expressed as the child support schedule set forth in Rule 1910.16–3, the formula set forth in Rule 1910.16–4 and the operation of the guidelines as set forth in these rules.

\* \* \*

(d) If it has been determined that there is an obligation to pay support, there shall be a rebuttable presumption that the amount of the award determined from the guidelines is the correct amount of support to be awarded. The support guidelines are a rebuttable presumption and must be applied taking into consideration the special needs and obligations of the parties. The trier of fact must consider the factors set forth in Rule 1910.16–5. The presumption shall be rebutted if the trier of fact makes a written finding, or a specific finding on the record, that an award in the amount determined from the guidelines would be unjust or inappropriate.

\* \* \*

### Explanatory Comment–1998

\* \* \*

B. *Statutory Considerations.*

\* \* \*

1. Reasonable Needs and Reasonable Ability to Provide Support. The guidelines make financial support of a child a primary obligation. They assume that parties with similar net incomes will have similar reasonable and necessary expenses. After the basic needs of the parents have been met, the child's needs shall receive priority. The guidelines assume that if the obligor's net income is less than $550, he or she is barely able to provide for basic personal needs. In these cases, entry of a minimal order is appropriate after considering the party's living expenses. In some cases, it may not be appropriate to order support at all.

\* \* \*

2. Net Income. The guidelines use the net incomes of the parties, and are based on the assumption that a child's reasonable needs increase as the combined net income of the child's parents increases. Each parent is required to contribute a share of the child's reasonable needs proportional to that parent's share of the combined net incomes. The custodial parent makes these contributions entirely through direct expenditures for food, shelter, clothing, transportation and other reasonable needs. In addition to any direct expenditures on the child's behalf, the non-custodial parent makes contributions through periodic support payments.

3. Allowable Deviations. The guidelines are designed to treat similarly situated parents, spouses, and children in the same manner. However, when there are unavoidable differences, deviations must be made from the guidelines. Failure to deviate from these guidelines by considering a party's actual expenditures where there are special needs and special circumstances constitutes a misapplication of the guidelines.

Pa.R.C.P.1910.16—1(a)(1), (b), (d), Explanatory Comment—1998 (B)(1)-(3). *See also Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984) (stating court must ascertain reasonable needs of child as they relate to net income of both parents and their own living expenses to establish fair and reasonable order of support).

¶ 14 Pennsylvania Rules of Civil Procedure Rule 1910.16—5 sets forth factors the court must consider in determining whether to deviate from the basic support obligation:

### Rule 1910.16–5. Support Guidelines. Deviation

(a) If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation. . . .

(b) In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) assets of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

(8) in a spousal support or alimony pendent elite case, the period of time during which the parties lived together from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

* * *

Pa.R.C.P.1910.16–5(a)–(b). Thus, a court has reasonable discretion to deviate from the guidelines if it appears to be necessary and the record supports the deviation. *Ball v. Minnick,* 414 Pa.Super. 242, 606 A.2d 1181, 1191 (1992) (*en banc*), *affirmed and remanded,* 538 Pa. 441, 648 A.2d 1192 (1994). Under the guidelines, however, the court may release a parent from **any and all** obligation of support only where the parent's income would go below the threshold of $550.00 per month, if he had to pay support. *See* Pa.R.C.P.1910.16–1, Explanatory Comment–1998 (B)(1).

¶ 15 A parent must discharge his support obligation to his minor child where he can reasonably do so, regardless of the child's assets. *Sutliff, supra,* at 405, 528 A.2d at 1324. Where the parent's resources are lacking, the court may consider a child's assets if such expenditures would save the child from need or destitution and are in the child's interest. *Id.* at 406, 528 A.2d at 1324. A parent may not evade his support obligation by depleting his child's own assets, unless the parent is genuinely unable to provide for the child's needs. *Flory v. Flory,* 364 Pa.Super. 67, 527 A.2d 155, 157 (1987) (holding income from child's guardianship account, established in settlement of child's tort claim, could not be used to meet father's support obligation unless court determined father was unable to provide for support out of his own resources). Additionally, assets in a child's custodial account may be expended for the use and benefit of the minor in addition to, but not in substitution for, any parental support obligation. *Sternlicht, supra* at 740 (holding father was not permitted to use child's PUTMA account funds in *lieu* of support obligation without court determination that father had insufficient independent means to discharge his obligation). *See also Sutliff, supra; In re Gumpher,* 840 A.2d 318 (Pa.Super.2003) (finding mother was not entitled to reimburse herself from child's PUTMA account for funds expended to fulfill her own support obligation).

¶ 16 A special needs trust is a trust established by a parent, grandparent, legal guardian, or a court for the benefit of a disabled person. *See* 42 U.S.C. § 1396p(d)(4)(A). The purpose of a special, or supplemental needs trust is to provide income for the **special** or **supplemental** needs of a disabled beneficiary, without disqualifying him from receiving public assistance for his basic needs. *Id.* A major

feature of such a trust is that the state will receive any funds remaining in the trust upon the death of the beneficiary, up to the amount of Medicaid payments made on behalf of the beneficiary during his lifetime. *Id.*

¶ 17 Congress authorized the use of special needs trusts through a 1993 amendment to the Social Security Act, as a mechanism to prevent disabled persons with proceeds from personal injury and medical malpractice suits from being disqualified for Supplemental Security Income ("SSI") and Medicaid benefits. *Id.* As SSI and Medicaid provide disabled persons with only basic necessities needed to maintain their health and support, special needs trusts provide services and goods, not covered by basic public or private insurance, which parents would need to provide during their lifetime to enhance a disabled child's life. *See* Jennifer Field, *Special Needs Trust: Providing for Disabled Children Without Sacrificing Public Benefits,* 24 J. Juv. L. 79 (2004).

¶ 18 In the instant case, the trial court explained its decision to deviate downward from the support guidelines, and eliminate Father's support obligation to Child, as follows:

> Given that the parties have relatively equivalent annual net incomes, and the direct expenditures necessary for the child have been eliminated by the liberal payment from the Trust, and the value of those payments as they naturally inured to the benefit of Mother, it is clear that there exists no child support obligation in this case. Mother, in the course of legal argument, opined that the child's future is always uncertain and therefore a financial responsibility should be maintained. However, exactly because the future is always uncertain and the funds in this case have been so excellently managed, child support can

> be amended by petition, upon cause shown.

(Trial Court Opinion, dated May 26, 2004, at 5).

¶ 19 We have found no legal authority which allows the court to eliminate Father's support obligation, where he can reasonably provide for some of Child's needs. Although the court may deviate from the guidelines in consideration of the factors in Rule 1910.16–5, we decline to accept the court's decision, grounded as it is on the amount of funds in the special needs Trust. Releasing Father, as the non-custodial parent, from all support obligation to Child permits Father to evade his support obligation through the use of the Trust, even though Father is not the custodian of the assets of the trust. *See Sutliff, supra.*

¶ 20 As a matter of law and public policy, we will not allow a support obligation to be underwritten by a special needs disability trust, and permit those assets to be depleted. Father cannot be excused from his support obligation by a fortuity of circumstances, unless Father is genuinely unable to contribute to Child's reasonable needs. *See Sutliff, supra; Sternlicht, supra; Flory, supra.* The Trust was established to provide for Child's supplemental needs as a disabled person, who will never live or work independently, and preserves his right to receive public assistance for basic services for which he is eligible. When Child turns twenty-one (21), some of the assistance he now receives through Mother's insurance will no longer be available, and additional Trust assets will have to be utilized for Child's care. As the purpose of the Trust is to supplement, not to supplant, resources otherwise available for Child's basic needs, the Trust assets should not be a resource that excuses Father's primary support obligation. Thus, the court erred

when it considered the Trust as the deciding factor in excusing Father's support obligation. In light of the existence of the Trust, Father will not have to provide **additional** support to meet Child's special needs through an upward deviation from the support guidelines. Likewise, we will not permit Father to be released through a downward guidelines deviation from any further support obligation because of that trust. Accordingly, we hold a special needs trust is not a factor to be considered under Pa.R.C.P.1910.16–5 for deviating from the guideline amount of support.

¶ 21 Moreover, the support guidelines do not permit the court to release Father from **all** obligation of support, **except** where the Father's income would go below the threshold of $550.00 per month if he had to pay support. *See* Pa.C.R.P. 1910.16–1, Explanatory Comment–1998 (B)(1).

 ¶ 22 Further, the court ultimately failed to credit sufficiently Mother's ongoing and significant contribution to Child's support and welfare, even while acknowledging Mother's commendable efforts as the sole caregiver for Child for many years. The time she spends caring for Child means the Trust does not have to deplete Trust assets through further expenditure of funds to hire additional nursing care for Child. Mother's contribution to Child's emotional, psychological and physical well being through her personal care, her efforts to secure all available services for him, and her work with the Trust to provide a safe home environment for Child to continue living throughout his adulthood, cannot be overstated and should not be underestimated.[6]

¶ 23 The record contains no evidence of Father's lack of resources to provide some financial support for Child. Father is self-employed, earning in excess of $56,000.00 gross per year. Father has a primary, independent obligation to contribute to Child's support during Child's minority, while preserving the Trust assets for Child's special needs. The basic support figures in the Child Support Schedule in Pa.R.C.P.1910.16–3 represent average threshold expenditures for children for food, housing, transportation, clothing, and other miscellaneous items needed by children and provided by their parents, including the first $250.00 of unreimbursed medical expenses incurred annually per child. Here, Child's special needs are extraordinary and will continue to increase as he moves into adulthood. As a practical matter, some of the programs and benefits he now enjoys by virtue of Mother's employment will cease when Child reaches the age of twenty-one. Because Child's life expectancy is uncertain, the Trust assets must be preserved to cover his additional extraordinary needs in the future.

¶ 24 Thus, the trial court's determination is contrary to established law in this jurisdiction and the statutory purpose of the Trust, and fails to promote Child's best interest. *See* 42 U.S.C. § 1396p(d)(4); 23 Pa.C.S.A. § 4321; *Sternlicht, supra.* Therefore, we remand the matter to the Domestic Relations Officer to recalculate Father's support obligation in accordance with the support guidelines as demonstrated in footnote two. There shall be no additional adjustment to Father's child support obligation, based on the existence of the Special Needs Trust. The Domestic Relations Officer is also directed to make a determination of arrearages and devise a

---

**6.** Mother uses the $500.00/month from the Trust to pay for extraordinary expenses associated with Child's needs and socialization in the community. Mother pays out-of-pocket for outings/entertainment, lunches, clothing, cell phone, haircuts, gifts, and vacations.

payment schedule, including a fair immediate lump sum payment and reasonable monthly payments on arrearages.[7]

¶ 25 Upon a thorough review of the record and the applicable law, we hold the trial court erred when it deviated from the Support Guidelines and relieved Father of all support obligation to Child because of Child's Special Needs Disability Trust. Accordingly, we reverse and remand the matter to the Domestic Relations Officer to recalculate Father's support obligation in accordance with our directions.

¶ 26 Order of May 26, 2004 reversed and case remanded for proceedings consistent with this opinion; Order of June 18, 2004 vacated in part and affirmed in part. Jurisdiction is relinquished.

7. Although unreimbursed medical expenses are not at issue in this appeal, we note Mother's Health Insurance Coverage Report indicates that, as a result of her employment, NCAS Pennsylvania covers hospitalization, major medical, and prescriptions with a family co-pay of $15.00/month. School Claims Service LLC covers dental and vision at no additional cost for the coverage.