J-A15020-16

2016 PA Super 255

| MICHAEL HANRAHAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JEANNE BAKKER | |
| Appellee | No. 1638 EDA 2015 |

Appeal from the Order Entered June 4, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2008-16689

| MICHAEL J. HANRAHAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JEANNE L. BAKKER | |
| Appellee | No. 1702 EDA 2015 |

Appeal from the Order Entered June 4, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2008-16689

BEFORE:  FORD ELLIOTT, P.J.E., DUBOW, J., and JENKINS, J.

DISSENTING OPINION BY JENKINS, J.:             **FILED NOVEMBER 18, 2016**

Respectfully, I disagree with the majority's decision to reverse and remand this case.  I do not believe the trial court abused its discretion by considering as a relevant factor that Michael Hanrahan ("Father") set up a $2,500,000.00 trust for his children or by requiring Jeanne Baker ("Mother") to put $30,000.00 of the $52,000.00 to $60,000.00 per month that Father

was required to pay in child support into a PUTMA account. Further, I disagree that the trial court erred by failing to award attorney fees to Mother. Therefore, I respectfully dissent.

This Court may only reverse a trial court's determination of child support where the support order cannot be sustained on any valid ground. **Bulgarelli v. Bulgarelli**, 934 A.2d 107, 111 (Pa.Super.2007). "We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order." **Id.** Further, the duty to support one's child is "absolute, and the purpose of child support is to promote the child's best interests." **Ricco v. Novitski**, 874 A.2d 75, 80 (Pa.Super.2005) (citations omitted).

The procedure for determining child support in high-income cases is governed by the following rules:

> **Rule 1910.16-3.1. Support Guidelines. High Income Cases**
>
> **(a) Child Support Formula.** When the parties' combined monthly net income is above $30,000, the following three-step process shall be applied to calculate the parties' respective child support obligations. The amount of support calculated pursuant to this three-step process shall in no event be less than the amount of support that would have been awarded if the parties' combined net monthly income were $30,000. That amount shall be a presumptive minimum.
>
> (1) First, the following formula shall be applied as a **preliminary analysis** in calculating the amount of basic child support to be apportioned between the parties according to their respective incomes:

\* \* \*

Two children:

$3,836 +11.6% of combined net income above $30,000 per month.

\* \* \*

(2) And second, the trier of fact shall **apply Part II and Part III of the formula at Rule 1910.16-4(a),** making any *applicable adjustments* for substantial or shared custody **pursuant to Rule 1910.16-4(c)** and allocations of a*dditional expenses* pursuant to **Rule 1910.16-6**;

(3) Then, third, the trier of fact **shall consider** the factors in **Rule 1910.16-5** in making a final child support award and **shall** make findings of fact **on the record or in writing**. After considering all of the factors in Rule 1910.16-5, the trier of fact **may** adjust the amount calculated pursuant to subdivisions (1) and (2) above **upward or downward**, subject to the presumptive minimum.

Pa.R.C.P. No. 1910.16-3.1 (emphasis added)

### Rule 1910.16-5. Support Guidelines. Deviation

**(a) Deviation.** If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.

*Note:* The deviation applies to the amount of the support obligation and not to the amount of income.

**(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

- 3 -

(4) ages of the children;

(5) the relative assets and liabilities of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

(8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. No. 1910.16-5. The court must consider the enumerated deviation factors, and it must base any deviation on those factors. *E.R.L. v. C.K.L.*, 126 A.3d 1004, 1009 (Pa.Super.2015).

I agree with the majority's analysis of Pa.R.C.P. 1910.16-3.1, its determination that reasonable needs are factored into the guideline amount for high-income cases, and its conclusion that the trial court did not err by failing to engage in a separate reasonable needs analysis in calculating the child support award. I further agree with the learned majority that the trial court properly conducted the first two steps of the preliminary analysis of Pa.R.C.P. No. 1910.16-3.1. However, I disagree with the conclusion of Mother and the learned majority that the trial court erred by considering Father's contribution of $2,500,000.00 into an irrevocable trust for his children as a relevant factor supporting a downward deviation for support purposes.

Pursuant to Pa.R.C.P. No. 1910.16-3.1, after conducting the first two steps of the preliminary analysis, a trial court is required to consider the

relevant factors announced in Rule 1910.16-5. "[T]he trier of fact must carefully consider all the relevant factors and make a reasoned decision as to whether the consideration thereof suggests that there are special needs and/or circumstances which render deviation necessary." *Elias v. Spencer*, 673 A.2d 982, 985 (Pa.Super.1996). "As these rules and the prevailing case law make clear, a court generally has reasonable discretion to deviate from the guidelines if the record supports the deviation." *Silver v. Pinskey*, 981 A.2d 284, 296 (Pa.Super.2009) (citing *Ricco v. Novitski,* 874 A.2d 75, 82 (Pa.Super.2005), *appeal denied,* 889 A.2d 1217 (Pa.2005)). "In a support guidelines case, once the court has properly consulted the guidelines, it has the discretion to deviate from the guidelines figure, as long as the court provides adequate reasons for the deviation." *Id.*

Here, the trial court considered as a relevant factor that Father voluntarily contributed $2.5 million into a trust fund for his children and accordingly made a downward deviation. The majority cites *Portugal v. Portugal*, 798 A.2d 246, 252 (Pa.Super.2002) for the proposition that a father's "voluntary contributions to his 401(k) still constituted income for support purposes, and the trial court could not reduce his child support obligation because of those voluntary contributions." Majority Opinion at 14. Although the majority finds this case analogous to the present case, the specific facts of the two cases vastly differ. Although both the contribution in *Portugal* and the contribution in the present case were voluntary, the

similarity of the contributions ends there.  Here, Father did not place the $2.5 million into his 401(k) in an attempt to exclude it from his income; he included the $2.5 million in his income and then created an irrevocable trust for the benefit of his children.  He is neither a trustee nor a beneficiary of the trust.

Additionally, to support its view that the trial court erred by considering the $2.5 million contribution, the majority cites *Sutliff v. Sutliff* for the proposition that "a parent's obligation to support minor children is independent of the minor's assets." 528 A.2d 1318, 1320 (Pa.1987).  In this case, the court did not elect to make a downward deviation because the children had great assets; it made the deviation because Father chose to give his children a significant amount of his income to secure their futures, a gift clearly in their best interest.  Thus, I do not find the trial court abused its discretion in considering this a relevant factor to warrant a downward deviation.

Next, I disagree with the majority's contention that the trial court erred by requiring Mother to place $30,000.00 of the $52,000.00 to $60,000.00 Father paid per month in child support.

"The duty to support one's minor child is absolute, and the purpose of child support is to promote the child's best interests."  *Ricco*, 874 A.2d at 80.  "The duty of child support, as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father and

must be discharged by the parents even if it causes them some hardship."
***D.H. v. R.H.***, 900 A.2d 922, 931 (Pa.Super.2006), *as amended* (July 3, 2007) (quoting ***Yerkes v. Yerkes***, 824 A.2d 1169, 1171 (Pa.2003)).

The majority opines that the trial court erroneously relied on ***Branch v. Jackson***, 629 A.2d 170 (Pa.Super.1993) for the authority to support its order that a portion of child support monies could be placed into a PUTMA account. **See** Majority Opinion, footnote 3. The majority correctly notes that the trial court inaccurately stated that in ***Branch***, this Court required a father to place a certain amount into a trust for future expenses. In actuality, this Court vacated and remanded ***Branch*** for development of the record. I find it interesting to note, however, that upon remanding the case in which the trial court had required the father to place a certain amount of money into a PUTMA account, this Court stated: "Because the record does not reveal a calculation of child's reasonable needs, we are unable to determine whether the order is excessive, adequate, or just right." ***Branch***, 629 A.2d at 171. Thus, while it is not determinative, ***Branch*** suggests that the trial court's mandate that the father place a certain amount of child support into a PUTMA account could have been "just right."

The majority then correctly notes that if a portion of the child support were placed into a PUTMA account, Mother would have to spend down her own personal assets on her own children before taking money from the PUTMA account. Indeed:

- 7 -

> A custodian abuses his discretion and acts improperly if he expends funds from a PUTMA account for the purpose of fulfilling his support obligation in lieu of making the payments out of his own income and assets, where the parent has sufficient financial means to discharge it himself. PUTMA accounts may not be used for support before the parents expend their own resources.

*Sternlicht v. Sternlicht*, 822 A.2d 732, 741 (Pa.Super.2003), *aff'd,* 876 A.2d 904 (Pa.2005) (internal citations omitted).

The majority correctly cites *Mackinley v. Messerschmidt* for the proposition that "children should not be made to wait for support and parents should not be permitted to defer income to which they are entitled until they choose to avail themselves of it." 814 A.2d 680, 683 (Pa.Super.2002). The trial court, however, did not offend any of these legal principals by fashioning its award of child support in the best interest of the children.

Since the parties divorced, Father paid between $3,702.00 and $15,878.00 per month in child support before the present child support determination. This does not include the $70,000.00 per year Father pays towards the children's school tuition, camps, and activities. The parents share physical custody of the children equally, and Father testified that he spends about $2,000.00 per month on the children when they are in his custody. The instant support determination requires Father to pay between $52,000.00 and $60,000.00 per month, and it requires Mother to place $30,000.00 of that money into a PUTMA account for the children. Thus,

Mother may spend between $22,000.00 and $30,000.00 of Father's support payments per month before she must "expend her own resources." Again, supporting one's children is the equal responsibility of both parents "even if it causes them some hardship." **_D.H., supra._** Although Mother may experience some hardship expending her resources after she has spent the $22,000.00 to $30,000.00 per month she receives from Father in child support, if she still requires money to support her children's immediate needs, she can access their PUTMA accounts.

By requiring Mother to place the money into the PUTMA accounts, the trial court has considered the best interests of the children and avoided offending legal principals. Father is not deferring income until he chooses to avail himself of it; he is paying **_the children_** immediately. Mother can spend significantly more than she ever has on the children per month, the children will have money for the future to promote their best interests, and if the children require money from the PUTMA accounts for their immediate needs because the support they have received is not enough, they can access the money in those accounts. Further, both parents are obligated to support their children and the purpose of child support is to promote the best interests of **_the children_**. Thus, I do not think the trial court erred when it reasoned:

> to simply give [Mother] the child support monies for the 2013 [s]upport year in a lump sum, is contrary to the goal in child support matters, which is to serve the best interest of the children and would deprive the children of a fund to

guarantee maintenance of their lifestyle in the future when [Father's] income may be less or non-existent.

Trial Court Opinion, filed December 14, 2015. Unlike the majority, I see no abuse of discretion.

Finally, I disagree with the majority's determination that the trial court erred by failing to award Mother attorney's fees. I agree that the Property Settlement Agreement is a contract governed by contract law and that it provided, in relevant part, that "a breaching or wrongdoing party shall bear the burden and obligation of any and all costs and expenses and counsel fees incurred by himself or herself as well as the other party to the extent the other party is successful in enforcing his or her rights under this agreement." Agreement at 19. Unlike the majority, I agree with the trial court that neither party was successful in this litigation, and I do not believe Father breached the contract.

Father contested the statutory amount of the child support based on the significant increase in his income in 2012. The Agreement provided:

> Child support and the proportion of Child Expenses shall be recalculated each year… based on the parties' respective net incomes and Pennsylvania guidelines, provided, however, **either party may apply to the Court to adjust child support** and/or their share of Child Expenses for the year based on relevant factors.

Agreement at 13 (emphasis added). Father challenged the amount of the award by stating in a letter to Mother: "I simply cannot agree that the reasonable needs of two children could be anywhere close to the preliminary

- 10 -

calculation." Father continued to pay the $7,851.00 per month that he had been required to pay the previous year, he spent $70,000.00 on the children in tuition, camps and activities, and he put $2,500,000.00 into an irrevocable trust for the children. Even if he was not entitled to the downward deviation he desired, Father did not breach the contract by contesting the extreme increase in his child support calculation. He continued to pay the amount of child support he had paid the previous year, and he contributed into a trust for the children an amount that far exceeded what the statute required him to pay.

Thus, I respectfully dissent.