J-A14004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| TRACEY C. CARTER, | IN THE SUPERIOR COURT |
| --- | --- |
| Appellee | OF PENNSYLVANIA |
| v. | |
| TROY L. CARTER, | |
| Appellant | No. 3817 EDA 2016 |

Appeal from the Order Entered November 23, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 009807300 PACSES No. 363004162

BEFORE:  BENDER, P.J.E., BOWES and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED NOVEMBER 30, 2017**

Appellant Troy L. Carter ("Father") appeals from the order denying his motion to terminate an existing support order for his son Troy L. Carter, II ("Troy II"), born in January of 1994.  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> On May 26, 2015, Troy L. Carter ("Father") petitioned to modify an existing support order for his and Tracey L. Carter's ("Mother," Father's former wife) natural child, Troy L. Carter II ("Troy II").  Father sought to terminate the support order, alleging that Troy II, who is now 22 years of age, was no longer a dependent child.  After a hearing before a support master,[1] the master recommended that the petition to modify be denied and that Father continue to pay support for Troy II based upon Troy II's inability to engage in employment to support himself.  Father filed exceptions to the master's report and proposed order, and a hearing was held before the [c]ourt on November 23, 2016.  After counsel for each party presented argument and upon independent review of the evidence of record, the [c]ourt determined that Troy

II was an adult dependent child and was entitled to receive continued financial support from Father. Father was ordered to pay the sum of $1,986.57 per month, effective May 26, 2015, plus $100 monthly to be paid on the amount retroactively, for a total $2,086.57 monthly obligation.[2]

> [1] At the master's hearing, each of the parties testified. In addition, the master placed on the record the following items of documentary evidence: 1) Father's pay stubs; 2) Mother's pay stubs; 3) Mother's 2014 and 2015 W-2 Wage and Tax Statements; 4) Troy II's Social Security Administration Supplemental Security Income statement, dated Nov. 30, 2014, for $733 a month; 5) Psychological Assessment of Troy ll by Joel H. Fish, Ph.D., dated Dec. 28, 2012: 6) Psycho Educational Re-Evaluation Report of Troy II by Barbara C. Gelman, Psychologist for the School District of Philadelphia, dated March 30, 2015; and 7) Child/Adolescent Psychiatric Evaluation by Abayomi Ige, M.D., for Warren E. Smith Health Centers, dated Aug. 17, 2015.
>
> [2] Father's monthly net income is $20,558.05; Mother's monthly net income is $6,191.22. See Support Guideline Calculation, April, 7, 2016.

Father then filed the instant appeal. In his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, Father avers that 1) there was not sufficient evidence to establish that Troy II is physically and mentally unable to engage in profitable employment and that employment was not available at a supporting wage; 2) the Court abused its discretion "when it adopted" the Social Security Administration's findings regarding Troy II's ability to work; and 3) the Court erred and abused its discretion in not adjusting child support downward based upon Troy II's receipt of $733 per month in Supplemental Security Income ("SSI") benefits.

Trial Court Opinion, 1/6/17, at 1-2.

Appellant presents the following issues for our review on appeal:

1. Did the trial [c]ourt err, misapply the law, abuse its discretion and/or lack sufficient evidence in finding that [Troy II] is so

physically and mentally incapacitated that he is unable to engage in profitable employment?

2. Did the trial [c]ourt err, misapply the law, abuse its discretion and/or lack sufficient evidence in finding that employment for [Troy II] is not available at a supporting wage?

3. Did the trial [c]ourt err, misapply the law, abuse its discretion and/or lack sufficient evidence in finding that [Troy II's] mental and physical condition make it impossible for him to be employed and that [Troy II] met his burden of proof to overcome the legal presumption that child support terminates at emancipation?

4. Did the trial court err, misapply the law, and abuse its discretion regarding its failure to adjust child support downward due to . . . [Troy II's] receipt of $733.00 per month from Social Security Supplemental Income (SSI)?

Appellant's Brief at 5-6.

The well-settled standard of review in a child support case provides as

follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**Kimock v. Jones**, 47 A.3d 850, 854 (Pa. Super. 2012). Furthermore, this

Court:

> must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making

independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.

When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented. This Court is not free to usurp the trial court's duty as the finder of fact.

***Mackay v. Mackay***, 984 A.2d 529, 533 (Pa. Super. 2009) (internal citations and quotation marks omitted).

In his first issue, Father argues that Troy II and Mother have failed to establish that Troy II is disabled to the extent that he is unable to engage in in profitable employment. Appellant's Brief at 11. Father asserts that despite Troy II's "mild intellectual disability", he may still have the capacity to become employed. ***Id.*** at 14. In support of his claim, Father relies on the December 28, 2012 Psychological Assessment of Troy II conducted by Joel H. Fish, Ph.D. ***Id.*** at 11-12.

Moreover, Father maintains that the report of psychologist Doctor Abayomi Ige, which indicates that Troy II needs ongoing support, is insufficient to establish that it is "impossible for Troy II to be employed in any job and that there are no jobs in the market suitable for him." Father's Brief at 14-15. Father also contends that Doctor Ige's report stating that Troy II "would definitely need assistance both functionally, employment wise, financially, and socially [for] the rest of his life" and that "financial support will

also help in terms of his recovery and rehabilitation" does not mean that "Father should have a continuing legal obligation to support Troy II at 'Guidelines Support' level." *Id.* at 15. Further, Father relies primarily on the case of *Style v. Shaub*, 955 A.2d 403, 409 (Pa. Super. 2008) in support of his claim, asserting that Troy II's disability is less severe than the disabled individual in *Style* and therefore establishes Father's position. *Id.* at 23. Father argues that the trial court had insufficient evidence to support its conclusions, abused its discretion, and arrived at a manifestly unreasonable conclusion given the record. *Id.* at 27.

> As this Court has explained in addressing support issues:
>
> [W]e recognize that as a general rule, the duty to support a child ends when the child turns eighteen or graduates from high school. *Hanson v. Hanson*, 425 Pa.Super. 508, 625 A.2d 1212 (1993). However, pursuant to 23 Pa.C.S. § 4321(3), a parent may be required to support a child who, upon reaching the age of majority, has a mental or physical condition that prevents the child from being self-supporting. *Id.* "To determine if an order of support is appropriate, the test is whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage." *Id.* at 1214.

*Kotzbauer v. Kotzbauer*, 937 A.2d 487, 489–490 (Pa. Super. 2007).

Moreover, we have clarified that whether someone is "employable" does not resolve the issue of whether that individual is entitled to continuing support from parents. In *Com. ex rel. Cann v. Cann*, 418 A.2d 403, 405-406 (Pa. Super. 1980), the adult child, who had a learning disability, was unable to earn a supporting wage because of her mental capacity, even though

she worked forty hours per week at a cleaning job and babysitting. *Id.* at 404-406. This was sufficient to require her father to continue paying support when it was determined that her living expenses exceeded her income. *Id.* at 405-406. Thus, an adult child who is mentally or physically disabled is entitled to support even if he or she is employable but is incapable of self-support. *See id*. at 405 (the party seeking to vacate a support order in this scenario "must demonstrate not just that the child is capable of earning some income, but that the child is able to earn a sufficient living to be entirely self-supporting in order to justify vacating a support order"); *see also Kotzbauer*, 937 A.2d at 490-494 (despite working sixteen to twenty hours a week, adult child was unable to support herself due to her disability, and her father was responsible for providing continuing support); *Hanson v. Hanson*, 625 A.2d 1212 (Pa. Super. 1993) (where adult child working part-time jobs was unable to support herself due to her disability, father was responsible for providing continuing support).

Turning to the facts of the case before us, the Psychiatric Evaluation performed by Doctor Ige at Warren E. Smith Health Centers ("WES") reflects the following, in relevant part, regarding Troy II:

> The question being asked by the court is to determine his level of independence and if there is any need for continuing child support payment for him to establish a relatively stable life. Because of his diagnosis of Autism and Mild Intellectual Disability, he is in need of constant support, supervision and assistance. Troy is not able to establish full independence in spite of his [aging] out of the educational system. He would definitely need assistance both functionally, employment wise, financially, and socially for the rest

of his life. Financial support will also help in terms of his recovery and rehabilitation. In my view, child support payment for his upkeep and to supplement his social security disability income is still needed as Troy cannot establish full independence.

WES Psychiatric Evaluation conducted by Abayomi Ige, M.D., 8/17/15, at 4.

Additionally, the Re-Evaluation report of Troy II, conducted through his school district, reflects that Troy II was placed in the special education program there and received "life skills support programming and speech therapy." Psycho Education Re-Evaluation Report of Troy II by Barbara C. Gelman, Psychologist for the School District of Philadelphia, 3/30/15, at 1-2. Troy II's program included "coursework in English, functional academics, physical education, vocational and interpersonal skills and personal maintenance." *Id.* at 1. Troy II has diagnoses of autism and intellectual disability. *Id.* Troy reads at a third or fourth grade level and he has difficulty with double and triple digit addition and subtraction, and multiplication. *Id.* Additionally, Troy II was deemed disabled by the Social Security Administration and is receiving Social Security benefits.[1] Troy II's Social Security Administration Supplemental Security Income statement, dated November 30, 2014.

---

[1] Supplemental Security Income ("SSI") provides disabled individuals with means sufficient to cover only basic necessities needed to maintain their health and support. *Ricco v. Novitski*, 874 A.2d 75, 83 (Pa. Super. 2005). Other sources of funding are necessary to provide services and goods, not covered by basic public or private insurance, which parents would need to provide to enhance the disabled child's life. *Id.*

Accordingly, there was sufficient evidence upon which to sustain the trial court's determination that Father is required to continue to pay support for his adult child who is incapable of self-support. Indeed, the trial judge made the following determination:

> Based upon the credible evidence, Troy II sustained his burden of proof in overcoming the presumption of non-entitlement to continued support because he is physically and mentally unable to engage in profitable employment. He is an individual who has a pervasive developmental disorder, who is of limited intellectual ability, with a history of congenital malformations, hypoplastic lungs, scoliosis, and hip dysplasia. He functions at a third or fourth grade reading level and has only the most rudimentary arithmetic skills. He does not know that eight quarters constitutes a sufficient amount of money to make a $1.40 purchase. He has difficulty telling time on an analog clock. He does not write clearly and spells poorly. He is unable to travel on public transit alone and is reliant on paratransit. As stated by Dr. Ige, Troy II needs constant support, supervision and assistance.[7]
>
> [7] This opinion of a medical expert is itself evidence upon which the Court may rely. See Commonwealth v. Meals, 912 A.2d 213, 223-24 (Pa.2006).
>
> * * *
>
> The award by the Social Security Administration of SSI benefits to Troy II is persuasive evidence that he is not physically and mentally able to engage in profitable employment. The [c]ourt did not "adopt" the findings of the Social Security Administration, but weighed this evidence in conjunction with the other evidence during the course of its independent review.

Trial Court Opinion, 1/6/17, at 8-9.

The evidence of record supports the conclusion that Troy II is incapable of self-support, and the trial court's determination can be sustained on

- 8 -

multiple grounds.[2]  Therefore, this Court cannot reverse the trial court's order. ***Kimock***.

Additionally, the trial court's credibility determinations are supported by the record.  As noted, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.  ***Mackay***, 984 A.2d at 533.  This Court may not usurp the credibility determinations made by the trial court.  ***Id.***

Furthermore, in light of ***Cann, Kotzbauer*** and ***Hanson***, Father's argument that Troy II is capable of some level of employment is irrelevant. Even if Troy II were to obtain some level of employment, the evidence supports the conclusion that he would be unable to self-support.  Thus, pursuant to ***Cann***, ***Kotzbauer***, and ***Hanson***, Mother and Troy II carried their

---

[2] Despite Father's discussion of the report prepared by Dr. Fish in support of his claim, the trial court indicated that it did not rely on that report in making its determinations.  As the trial court explained:

> The [c]ourt did not afford much weight to the Psychological Assessment of Troy II by Joel H. Fish, Ph.D., dated Dec. 28, 2012, in its review of the evidence due to the "age of the information" provided by this report.  In this regard, the [c]ourt agreed with one of Father's exceptions that, "[t]he Master erred in relying upon plaintiff's P-5 Psychological Assessment by Dr. Joel Fish for [the] reason that it was done on 12/28/2012, over three years prior to the Master's Hearing and was thus outdated and unreliable."

Trial Court Opinion, 1/6/17, at 5 n.3 (internal citations omitted).

burden of rebutting the presumption of non-support and that Father is required to continue to provide support for Troy II.

We further note that the case principally relied upon by Father, **Style**, 955 A.2d 403, is not factually similar to the current case and therefore, is not persuasive authority in support of Father's claim. Despite Father's assertion to the contrary, the facts in **Style** reflect that the adult child in that case, Dustin, was less impaired than Troy II. Specifically, Dustin had diagnoses of Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), dysthymia (also referred to as chronic depression), and Atypical Autism. **Id.** at 406. Dustin did not have an intellectual disability. Additionally, Dustin read at an eighth grade level and could do mathematics at a ninth grade level. **Id.** at 406. Indeed, there was no evidence submitted in that case that Dustin could not engage in profitable employment. **Id.** at 411. Furthermore, in **Style** there was no determination of disability by the Social Security Administration. Thus, Father's reliance upon **Style** is misguided. Accordingly, for the reasons stated, Father's first claim fails.

In his second issue, Father asserts that Troy II and Mother have not overcome their burden of proof that employment is not available to Troy II at a supporting wage. Father's Brief at 28. Father maintains that if we reverse the trial court's decision regarding the first of the two-part test under **Style**, then we must consider whether Mother and Troy II have met their burden of

proving that employment is not available to Troy II at a supporting wage. Father's Brief at 28.

As noted, to rebut the presumption that a parent has no obligation to support an adult child, "the test is whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage." *Style*, 955 A.2d at 409. Thus, this standard consists of a two-step test. *Id.* at 409-411.

The trial court found that "because Troy II showed that he is physically and mentally unable to engage in profitable employment, there was no need for the [c]ourt to determine the availability of any such employment to him." Trial Court Opinion 1/6/17, at 5 n.4. We agree. For reasons set forth above, the evidence of record supports the conclusion that Troy II is incapable of engaging in profitable employment. Thus, we need not determine whether employment is available to him at a supporting wage. *Style*, 955 A.2d at 410-411. Accordingly, Father's second claim fails.

In his statement of questions presented in his brief, Father presents the following third issue: "Did the trial [c]ourt err, misapply the law, abuse its discretion and/or lack sufficient evidence in finding that [Troy II's] mental and physical condition make it impossible for him to be employed and that [Troy II] met his burden of proof to overcome the legal presumption that child support terminates at emancipation?" Father's Brief at 5. Despite listing this

issue in his statement of questions involved, Father fails to address this question in the argument section of his brief.

Pa.R.A.P. 2119(a) mandates that an appellant must develop an argument with citation to and analysis of relevant legal authority. ***See also Commonwealth v. Heggins***, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) (stating that we must deem an issue abandoned, and therefore waived, where it has been identified on appeal but not properly developed in the appellant's brief). Accordingly, we find this issue abandoned and waived.

Additionally, this issue was not raised in Appellant's Pa.R.A.P. 1925(b) statement. Thus, it is waived on that basis as well. ***See Commonwealth v. Hill***, 16 A.3d 484, 491 (Pa. 2011) (quoting ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998)) (holding "[a]ny issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived.")). Furthermore, to the extent that we would have addressed the merits of this claim, we would have found this issue to lack merit for the reasons set forth in addressing Father's first issue.

In his final issue, Father contends that the trial court abused its discretion by failing to give him a downward child support deviation based on Troy II's receipt of SSI. Father's Brief at 29. Father argues that Pa.R.C.P. 1910.16-5 provides that SSI benefits are not considered as income when determining support but may be considered as other income in the household, which may support a downward deviation from the support guidelines when it

is necessary to avoid an unjust or inappropriate result. *Id.* at 29. Father contends that the amount he was ordered to pay, $1,986.57 per month in support, in addition to Troy II's receipt of SSI in the amount of $733.00 per month, was excessive, and "[t]here was no testimony that the child had circumstances to justify the need for such large resources." *Id.* at 30. Father further asserts that "[g]iven this level of income to the household of Mother/Troy II, the trial court abused its discretion in not granting Father any downward support adjustment." *Id.* Thus, Father maintains that his support should be reduced by the $733.00 that Troy II receives in SSI. *Id.*

Our Court has stated the following in determining whether assets of a child should be considered in support matters:

> A parent must discharge his support obligation to his minor child where he can reasonably do so, regardless of the child's assets. Where the parent's resources are lacking, the court may consider a child's assets if such expenditures would save the child from need or destitution and are in the child's interest. A parent may not evade his support obligation by depleting his child's own assets, unless the parent is genuinely unable to provide for the child's needs.

*Ricco*, 874 A.2d at 82 (internal citations omitted).

The trial court made the following determination on this issue:

> Finally, the [c]ourt exercised its discretion in determining that a downward deviation from the support guidelines, based upon Troy II's receipt of $733 a month in SSI benefits, was not necessary to avoid an unjust or inappropriate result. As opined by Dr. Ige, "child support payments for his upkeep and to supplement his social security disability income [are] still needed as Troy cannot establish full independence." Father's monthly net income of $20,558.05 enables him to continue to pay $2,086.57

in support for Troy II without imposing an unjust or inappropriate burden upon Father.

Trial Court Opinion, 1/6/17, at 9.

Here, Troy II's assets should not be taken into account in determining the amount of support Father is required to provide. The court can consider the child's assets only when the parent's resources are lacking. ***Ricco***, 874 A.2d at 82. Given the fact that Father's net monthly income is $20,558.05, Father can reasonably pay the prescribed monthly support amount of $2,086.57.[3] As this Court has explained, Father cannot evade his support obligation by depleting his child's own assets, unless he is genuinely unable to provide for the child's needs. ***Ricco***, 874 A.2d at 82. In light of Father's assets, it would be disingenuous to assert that he is genuinely unable to provide for Troy II's needs. Accordingly, Father's final claim fails.

Order affirmed.

Judge Bowes joins the Memorandum.

P.J.E. Bender files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2017

---

[3] This amount includes the additional payment of $100 monthly to be paid on the support amount retroactively. Trial Court Opinion, 1/6/17, at 2.