J-A11038-20

2020 PA Super 229

| | | |
|---|---|---|
| M.E.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| W.L.W. | : | |
| | : | |
| Appellant | : | No. 925 MDA 2019 |

Appeal from the Order Entered May 21, 2019
In the Court of Common Pleas of Adams County Civil Division at No(s):
04-DR-101,
17-DR-345, 2006-SU-0001033,
PACSES 008106183, PACSES 234116752

| | | |
|---|---|---|
| J.Z.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.E.W. | : | No. 928 MDA 2019 |

Appeal from the Order Entered May 23, 2019
In the Court of Common Pleas of Adams County Domestic Relations at
No(s):  17-DR-345,
PACSES 234116752

| | | |
|---|---|---|
| W.L.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.E.W. | : | No. 929 MDA 2019 |

Appeal from the Order Entered May 23, 2019

In the Court of Common Pleas of Adams County Domestic Relations at
No(s):  04-DR-101,
PACSES 008106183

| | | |
|---|---|---|
| M.E.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| W.L.W. | : | No. 995 MDA 2019 |

Appeal from the Order Entered May 21, 2019
In the Court of Common Pleas of Adams County Civil Division at No(s):
2006-SU-0001033

| | | |
|---|---|---|
| W.L.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.E.W. | : | |
| | : | |
| Appellant | : | No. 1002 MDA 2019 |

Appeal from the Order Entered May 9, 2019
In the Court of Common Pleas of Adams County Domestic Relations at
No(s):  04-DR-101,
PACSES 008106183

| | | |
|---|---|---|
| J.Z.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.E.W. | : | |
| | : | |
| Appellant | : | No. 1003 MDA 2019 |

Appeal from the Order Entered May 23, 2019

J-A11038-20

In the Court of Common Pleas of Adams County Domestic Relations at
No(s): 17-DR-345,
PACSES 234116752

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED SEPTEMBER 18, 2020**

In this consolidated appeal, W.L.W. ("Mother") and her son, J.Z.W., appeal from the order entered in the Court of Common Pleas of Adams County, Domestic Relations, dismissing their Petitions for Modification of Support seeking the re-opening of the support case for J.Z.W. given alleged changes in relevant circumstances. Specifically, the trial court determined that M.E.W. ("Father"), an Ophthalmologic surgeon, was not obligated to pay any support for J.Z.W., and it reinstated a former order requiring Father to provide medical insurance coverage only. In Father's cross-appeal, he contests the court's order denying his motion seeking to bar Mother's petitions on the basis of collateral estoppel or equitable estoppel.

We affirm the order as it pertains to Father's cross-appeal, but we vacate the order denying the petitions filed by Mother on behalf of herself and J.Z.W., respectively, and remand for calculation of Father's support obligations to J.Z.W. consistent with this decision.

The trial court aptly provides the facts and procedural history, as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

- 3 -

The above-captioned cases [came] before [the trial court] by virtue of cross-demands for hearing *de novo* filed by the parties, resulting from a Petition for Modification of Support filed by [Mother, W.L.W.] and a Complaint for Support filed by [Mother, W.L.W.] on behalf of [her adult disabled son] J.Z.W. The caption of the parties' divorce case is included because their marriage settlement agreement has some bearing on the support matters.

## ***GENERAL BACKGROUND***

Mother and M.E.W. ("Father") were married on August 11, 1990 and separated on September 8, 2006. They were divorced by decree dated January 7, 2011.[] They are the parents of three children, all of whom were once the subject of an Order of Court for support. Two of these children have emancipated and thus are no longer the subjects of that Order.

This instant issue involves support for [Mother's and Father's] [now 29] year-old dependent child, J.Z.W., who was born of the parties' marriage in January of 1991. The parents have stipulated that J.Z.W. is unable to engage in gainful employment in order to support himself. J.Z.W. resides primarily with Mother. By Orphans Court Decree dated September 17, 2015,[fn] J.Z.W. was found to be "a totally incapacitated person whose ability to receive and evaluate information effectively and communicate decisions is impaired to such a degree that he is a) totally unable to meet the essential requirements of his physical health and safety; and b) totally unable to manage his own financial resources." *In re: J.Z.W., OC-75-2015*. Thus, J.Z.W. was found to be in need of a plenary guardian of his person and estate. Mother was appointed Guardian for J.Z.W. in both of these capacities. In support of this decision, Judge Kuhn noted in his findings of fact that J.Z.W. has a "diagnosis of Trisomy 21/Down Syndrome, pervasive developmental disorder, ADHD and obsessive compulsive disorder, which is permanent in nature. He also cannot read nor write." *Id*.

---

Fn. Adams County Orphans Court case number OC-75-2015, presided over by the Honorable John D. Kuhn.

---

Prior to the entry of the Orphans Court Decree, the parties entered into a global Marriage Settlement Agreement ("M.S.A.") to resolve

their divorce litigation on January 5, 2011.  The M.S.A. was incorporated into but not merged with the Divorce Decree.  The M.S.A. included a provision for alimony, with reference to the support of J.Z.W., as follows:

> **11. <u>ALIMONY</u>:**  Beginning with the first day of the first month following the execution of this Agreement, [Father] agrees to pay [Mother] alimony in the amount of $800 per month and continuing for the life time of the parties' child, [J.Z.W.].  It is expressly agreed that the dollar amount of the alimony (i.e. $800 per month) is not modifiable upward or downward.  It is further expressly agreed, however, that the payment of alimony is terminable, and will terminate, in the event of [Mother's] remarriage, the death of either party, upon [Mother's] co-habitation as defined in the Divorce Code, or if there is ever a change of custody with respect to [J.Z.W.].
>
> It is the intent of the parties that [Father's] alimony obligation to [Mother] is to contribute to [Mother's] additional expenses that result from exercising primary care, custody and control of the parties' son, [J.Z.W.].
>
> This provision has been negotiated on the assumption that the payments described above shall be deductible by [Father] and includeable (sic) in the income of [Mother].  Therefore, it is the intention, understanding that agreement of the parties that the payments described in this paragraph constitute "alimony" as that term is defined in Section 71 of the Internal Revenue Code and that, accordingly, all such payments shall be includeable (sic) in Wife's gross income and deductible by Husband for Federal Income Tax purposes, pursuant to Section 71 and 215 of the Internal Revenue Code.

M.S.A., 1/5/11, at ¶ 11.

In his Findings of Fact in the guardianship case, Judge Kuhn noted that J.Z.W. was receiving $700 per month in Social Security benefits, but had no other income or assets at that time.  *In re: J.Z.W., OC-75-2015.*  Paragraph 12 of the parties' M.S.A. directs

that [Mother] shall be the representative Payee for J.Z.W.'s social security benefits.

## *BACKGROUND OF THE CHILD SUPPORT CASE*

Mother filed a Complaint on October 5, 2009 for the support of the parties' three children, J.Z.W. (born in 1991), K.A.W. (born in 1994) and A.N.W. (born in 1998).[] When the Complaint was filed, J.Z.W. was age 18, K.A.W. was age 15, and A.N.W. was age 10. A support Order in the amount of $1,266 per month was entered for all three children on February 18, 2010. J.Z.W. was 19 years old by that time and was receiving social security benefits. Father was ordered to provide medical insurance coverage for all three children.

Subsequent to the entry of that support Order, Mother has filed multiple petitions for modification of child support. The support amount was modified by Order dated April 6, 2011, in which the parties expressly agreed on the record during a hearing *de novo* to remove J.Z.W. from the support order altogether, and Father would continue paying support for the two younger children.[fn]

---

FN. During a hearing *de novo* held before the Honorable Robert G. Bigham on April 6, 2011, the parties' attorneys represented that J.Z.W. would be taken off the support order, effective January 7, 2011, [forming a new support amount for his two siblings of $1,875 per month]. Hearing Transcript, p.2.

---

On July 29, 2011, Mother filed another Petition for Modification to add J.Z.W. back into the support case. By Order of Court dated September 23, 2011, the DRS denied Mother's request

due to the parties' Marriage Settlement Agreement and no additional expenses currently for [J.Z.W.] to increase the child support amount. . . . An administrative review or review conference is at the call of either party concerning the extra ordinary (sic) expenses for [J.Z.W.] within the next six months. Otherwise a petition for modification would be necessary to change the order.

On October 7, 2011, Mother filed a Demand for Hearing De Novo. Testimony was taken on March 6, 2012, and April 5, 2012. A final Order was entered on April 9, 2012 for the support of A.N.W. only, with no provision for J.Z.W.

On May 22, 2014, Mother filed a Petition for Modification of Support requesting a review of Father's income. Support was modified for A.N.W. by Order dated June 18, 2014. The Conference Officer's notes from that proceeding indicate that "the parties have an adult child that requires special care," but no provision for J.Z.W. was made in that Order.

On June 19, 2015, Mother filed a Petition for Modification of Support requesting a review "due to change in incomes." A modified Order was generated on August 5, 2015 for A.N.W. The only vague allusion to J.Z.W.'s circumstances in the Conference Officer's notes was that the parties' disputed whether or not Father's $800.00 per month alimony payment should be included as income to Mother.

On January 15, 2016, Mother filed a Petition for Modification of Support to add J.Z.W. back into the support order. The Order of Court dated March 21, 2016 was entered for the support of J.Z.W. at $0 and A.N.W. at $1,862, noting that:

> The support amount remains at $1,862 per month through domestic relations section. The guideline calculation for two children would be $2,577 per month. [Father] is paying $800 per month by a Marriage Settlement Agreement for [J.Z.W.]. The combined amounts total more than the $2,577 per month guideline amount. [J.Z.W.] is added to the order for medical provisions.

This Order was not appealed.

On June 7, 2017, the [trial court] entered an Order terminating support for A.N.W., triggered by her emancipation, effective May 26, 2017. This Order directed closure of the case when all arrears were paid. No appeal was filed to that Order.

On July 18, 2017, Mother filed a Petition for Modification to re-open the support case for J.Z.W., claiming that she is entitled to "other" relief because of the following material and substantial

changes in circumstance: "sons (sic) mental status has gotten worse, unable to work do (sic) to his status. Lost my 50k a yr. income." On August 23, 2017, [the trial court] entered an Order dismissing Mother's Petition and directing closure of the case because Mother was receiving support for J.Z.W. through the parties' Marriage Settlement Agreement dated January 5, 2011 and because Mother failed to cooperate in providing medical documentation to Father in order to enable him to comply with the requirement to provide health insurance for J.Z.W.

Mother then filed a Demand for Hearing *De Novo* appealing the August 23, 2017 Order in 04-DR-101. Mother also filed a separate Complaint for Support listing J.Z.W. as the Plaintiff, docketed to 17-DR-435. Both matters . . . [were] consolidated for purposes of the court's decision.

In her . . . Demand for Hearing, Mother asserted that J.Z.W. has been disabled since birth and has "unusual medical and physical assistance needs which warrant a child support order" and that the $800.00 per month alimony provision in the parties' MSA is inadequate to meet the child's needs. In addition, Mother assert[ed] that Father failed to produce current income information at the time of the support conference as required by Pa.R.C.P. No. 1910.11. Father rectified this by producing evidence of his current income during the hearing.

Father assert[ed] that Mother [was] equitably and collaterally estopped from requesting additional support for J.Z.W. After consideration of the parties' briefs, the [trial court] remanded the matter to the Domestic Relations Section for a calculation of the basic support amount based upon the parties' current incomes, along with the reasonable needs and expenses for J.Z.W., to be offset by Father's monthly alimony payments, reserving the right of both parties to file an additional Demand for Hearing Novo.

Upon remand, the Conference Officer determined Mother's net monthly income to be $2,985.19 and Father's net monthly income to be $20,024.97. This yielded a guideline support obligation of $2,066.96 per month for J.Z.W. A downward deviation of $800.00 was applied to give Father credit for the alimony payments. This resulted in an obligation of $1,267.00 per month, effective July 18, 2017. It does not appear that there was much discussion of J.Z.W.'s reasonable needs during the conference. Both parties filed an additional Demand for [a] Hearing *De Novo*, and the

matter was certified as complex. Discovery was permitted and extensive testimony was taken, concluding on December 27, 2018. Post-hearing briefs were submitted by counsel on January 31, 2019.

Trial Court Opinion, 5/9/19, at 1-6.

By the trial court's order of May 23, 2019, the court dismissed Mother's petitions filed in her name and in the name of J.Z.W. In so doing, the court accepted and adopted the Conference Officer's calculation of J.Z.W.'s assets, Mother's and Father's respective incomes, and Father's resultant support obligation under support guidelines. The court then applied a downward deviation from the prescribed support amount reflecting both Father's $800 alimony payment for the benefit of J.Z.W., as provided in the parties' MSA, and Father's "fixed and unusual" financial obligation to repay a promissory note of over $1,000,000.00 executed as part of a series of agreements making him 50% shareholder in his business partner's Ophthalmic practice. The resultant downward deviation completely offset Father's guideline support obligation, such that the court's final order required Father to provide J.Z.W. with medical insurance only. The parties' respective timely notices of appeal followed.

Mother presents the following questions for our review:

1. Did the trial court err by using an incapacitated adult child's limited assets as a deciding factor to relieve his father, [an Ophthalmologist], of his support obligation, when [Father] is an extremely high earner who has ample resources to provide support?

2. Even if it were permissible to consider the child's resources, did the trial court nevertheless err by attributing income to the

- 9 -

child from sources that do not qualify as income under the child support guidelines?

3. Did the trial court err by deducting [Father's] business loan payments from his net income, when both the support guidelines and case law dictate that such voluntary expenses are not a factor to be considered in calculating support?

4. Did the trial court err by finding that [Father] is entitled to a downward deviation as a result of his business loan, when case law directs that the decision to expand one's business is not a valid basis for deviation?

5. Did the trial court err by reducing [Father's] support obligation calculation by $800 per month to give him "credit" for the alimony he pays?

Appellant's brief, at 4-5.

Father, for his part, raises one issue on cross-appeal:

[Did] the trial court err[] in determining that [Mother] is not barred from requesting child support for JZW on the basis of collateral estoppel or equitable estoppel[?]

Appellee's brief, at 2.

Our standard of review is as follows:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**Brickus v. Dent**, 5 A.3d 1281, 1284 (Pa.Super. 2010) (citations omitted).

- 10 -

Furthermore, this Court:

> must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.
>
> When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented. This Court is not free to usurp the trial court's duty as the finder of fact.

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa.Super. 2009) (internal citations and quotation marks omitted).

In Mother's first issue, she contends the trial court erred when it used J.Z.W.'s financial assets as a factor to relieve Father of his support obligations, especially where Father is an extremely high earner with ample resources to support his son. Where the parties have stipulated that their disabled son is incapable of supporting himself as an earner, Mother argues that she satisfied her evidentiary burden to rebut the presumption of nonsupport that applies to adult children. Under these facts of record, she asserts the trial court should have, therefore, set Father's support obligations without consideration of their son's assets.

In Pennsylvania, "the duty to support a child generally ceases when [he or she] reaches the age of majority, which is defined as either [18-years-old] or when [he or she] graduates high school, whichever comes later." *Style v. Shaub*, 955 A.2d 403, 408 (Pa. Super. 2008). When, however, the child has

some mental or physical condition that prevents self-support or emancipation, the parental obligation continues under 23 Pa.C.S.A. § 4321(3). *Geiger v. Rouse*, 715 A.2d 454, 458 (Pa. Super. 1998), *appeal denied*, 1999 WL 112220 (Pa. 1999); *Crawford v. Crawford*, 633 A.2d 155 (Pa. Super. 1993); *Hanson v. Hanson*, 625 A.2d 1212 (Pa. Super. 1993).

The test to determine whether an order of support is appropriate is "whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage." *Hanson*, *supra* at 1214[.] "The adult child … bears the burden of proving the conditions that make it impossible for [ ] him to be employed." *Verna v. Verna*, 432 A.2d 630, 632 (Pa. Super. 1981). *See also Kotzbauer v. Kotzbauer*, 937 A.2d 487, 489-90 (Pa. Super. 2007). Accordingly, "[t]he 'reasonable needs' of a disabled adult child are those needs which [he or she] is unable to meet through [his or her] own efforts." *DeWalt v. DeWalt*, 529 A.2d 508, 511 (Pa. Super. 1987).

In addressing Mother's first issue, we rely on the seminal case of *Ricco v. Novitski*, 874 A.2d 75 (Pa.Super. 2005), which discussed whether assets of a disabled child should be considered in support matters:

> A parent must discharge his support obligation to his minor child where he can reasonably do so, regardless of the child's assets. Where the parent's resources are lacking, the court may consider a child's assets if such expenditures would save the child from need or destitution and are in the child's interest. A parent may not evade his support obligation by depleting his child's own assets, unless the parent is genuinely unable to provide for the child's needs.

*Id.*, 874 A.2d at 82 (internal citations omitted).

Applying the above principle to the facts of the present case, we reject the trial court's methodology of reviewing J.Z.W.'s assets to adjust his high-earning Father's support obligation, as such a review is appropriate only when the parent's resources are lacking. *Ricco*, 874 A.2d at 82. Specifically, the trial court indicated that it reviewed J.Z.W.'s assets in light of his reasonable needs and then substantially relied on such assets to justify applying a downward deviation to Father's prescribed guideline amount of support. Coupled with the court's additional consideration of Father's alimony payment under the MSA and his obligation to repay a business loan taken to buy a 50% ownership interest in a lucrative Ophthalmic practice, J.Z.W.'s assets factored into the court's decision to completely offset Father's guideline amount of support despite Father's high annual income and evident ability to provide for J.Z.W.'s needs for the foreseeable future.

In adopting both the Conference Officer's calculations and her conclusion that J.Z.W.'s monthly assets exceeded the current basic support obligation, the trial court stated:

> The Conference Officer calculated Father's net monthly income to be $20,024.97. Father is an ophthalmic surgeon and a partner in [an established Ophthalmic LLC]. While Father does not quarrel with the calculation of his monthly net income, he requests a substantial deviation downward from the guideline amount of support, which will be discussed below.
>
> Utilizing the above monthly net incomes, the Conference Officer determined the guideline calculation of support to be $2,067.00 per month[] and applied a downward deviation in the amount of

- 13 -

> $800.00 per month in consideration of Father's "alimony" payment made for the benefit of J.Z.W., to arrive at a recommended support obligation of $1,267.00 per month. As noted, *supra*, J.Z.W. receives income either directly or indirectly in the amount of $3,979.57 per month [comprising monthly SSI payments of $752.00, alimony payments of $800.00, and ARC-funded services valued at $2,427.00. The trial court also referenced J.Z.W.'s "special needs trust," though there was no testimony whether any income is available to J.Z.W. through the trust at this time. ***See*** TCO at p. 9]. The latter sum [of $3,979.57] greatly exceeds the current basic support obligation, without even considering Mother's ability to contribute.

TCO, at 11.

The court's rationale relying upon J.Z.W's assets to relieve Father of his support obligations ignores the ***Ricco*** mandate that courts forego analysis of a child's assets where the support obligor is capable of providing for the child's needs. Father, however, argues that ***Ricco*** is distinguishable because it involved a minor child, whereas here, J.Z.W. is an adult.

It is undisputed that J.Z.W. is a severely disabled adult who will forever be unable to support himself to any degree. Indeed, ***Ricco*** addresses the need in such circumstances—where the parent's income is sufficient to enable continued support—for a disabled child's assets to remain available to assist him throughout his life as a disabled adult:

> Because the [Child's] Trust is being depleted in *lieu* of Father's support, Child's future needs as a disabled adult are at risk. Although the Trust assets are presently substantial, they are necessary to provide for Child's needs throughout his life….

***Ricco***, at 80.

As noted, Father in the case *sub judice* projects as having little difficulty providing financial support for his severely disabled adult son for the

foreseeable future. For the trial court to have reduced Father's support obligation after consideration of J.Z.W.'s assets and special needs trust was to disregard the holding in **Ricco** recognizing the need to preserve disabled children's assets that will serve them as a last resort of support if and when their parents are no longer able to provide for them. **See id**. Indeed, Father's alimony payment is one such perishable asset, as an array of contingencies dependent solely upon Mother's status call for its termination, regardless of J.Z.W.'s continued need. The trust in J.Z.W.'s name, apparently funded exclusively by his SSI benefits on occasion and consisting of an unestablished principal amount, is another such limited asset.[1]

With respect to J.Z.W.'s SSI benefit, Father notes that such payment to an adult child may also qualify under Rule 1910.16-5(b)(3) of our support guidelines as "other income in the household," **see** infra, thus permitting a court to apply a downward deviation from the guideline support obligation. We disagree, however, that the facts adduced below allowed for such a categorization of J.Z.W.'s benefits.

---

[1] It appears that the trial court also misconstrued the nature of the SSI payments at issue, as it opines that "Social Security derivative benefits can be counted as "other income in the household" for purposes of determining whether to deviate from child support guidelines. **Silver v. Pinskey**, 981 A.2d 284 (Pa.Super. 2009), Pa.R.C.P. 1910.16-5. J.Z.W. receives $752.00 per month in social security benefits through Mother, who is his current representative payee." TCO, at 12-13 (emphasis added). It is undisputed, however, that J.Z.W. receives direct benefits because of his own disability, and not derivative benefits, which would derive from a disability or death of one of his parents.

In support cases, "there is a rebuttable presumption that the amount of an award for support which results from the application of the Support Guidelines is correct." *Landis v. Landis*, 691 A.2d 939, 941 (Pa.Super. 1997) (citations omitted). Nevertheless, "where the facts demonstrate that this award is unjust or inappropriate, the trier of fact has the discretion to rebut that presumption and deviate from the guidelines." *Id.* at 941 (citations omitted).[2] Therefore, while we agree with Father that SSI payments may at times qualify as "other income in the household" such that a court may consider them a basis for deviating from the support guidelines, our jurisprudence nevertheless clearly limits a court's discretion to do so to instances where it is necessary to avoid an unjust or inappropriate result.

Under the record before us and for the reasons already expressed, we discern nothing unjust or inappropriate in requiring Father to support his son

---

[2] Pa.R.C.P. 1910.16-5(b) provides that, in deciding whether to deviate from the guideline support obligations, the trier of fact shall consider the following:

(1) unusual needs and unusual fixed obligations;
(2) other support obligations of the parties;
(3) other income in the household;
(4) ages of the children;
(5) assets of the parties;
(6) medical expenses not covered by insurance;
(7) standard of living of the parties and their children; and
(8) other relevant and appropriate factors, including the best interest of the child or children.

Pa.R.C.P. 1910.16-5(b).

commensurate with the guideline amount tailored to his obvious ability to pay. As this Court has explained, a parent cannot evade his support obligation by depleting his child's own assets, unless he is genuinely unable to provide for the child's needs. *Id*. In light of Father's assets, it would be misleading to assert that he is genuinely unable to provide for J.Z.W.'s needs such that a downward deviation from the prescribed amount was warranted. Accordingly, we conclude the trial court erred in factoring J.Z.W.'s assets in the decision to effect a downward deviation of Father's support payment.[3]

Mother's third issue posits that the trial court erred in adopting the Conference Officer's calculation deducting from Father's annual gross income his three-year average annual payment on the $1,062,148.00 Promissory Note he entered into in 2016 to purchase a 50% share of an ophthalmology practice owned solely at the time by his current business partner. As observed above, this adjustment reduced Father's average annual income over the three-year period from approximately $413,000.00 to $244,534.00. The final average income also ignored the rapid escalation in Father's annual income, Mother maintains, as he had earned over $600,000.00 in 2018.

According to Mother, it was error to apply Father's business loan to calculations of his income, as Rule 1910.16-5 provides that a deviation for an "unusual fixed obligation" may be applied to the amount of support, not to the

_____

[3] Our resolution of Mother's first issue in her favor obviates the need to address her second issue, which she raised only in the event we denied her relief under the first issue.

- 17 -

obligor's income. Allowable income deductions are provided, instead, in Pa.R.C.P. 1910.16-2(c)(1), which provides that deductions from monthly gross income may be taken only for income taxes, unemployment compensation taxes and Local Services Taxes, mandatory union dues, and alimony paid to the other party. The Rule's Explanatory Comment states that it "sets forth the exclusive list of the deductions that may be taken from gross income in arriving at a party's net income." *Id*., Explanatory Comment (2010). We, therefore, agree it was error to reduce Father's income by Father's obligations to repay his business loan.

In Mother's fourth issue, she contends it was also error for the court to deem Father's loan obligation as an "unusual fixed obligation" under Rule 1910.16-5(b)(1) qualifying him for an additional downward deviation from his guideline support obligation. This is so, she contends, because the repayment terms of Father's Promissory Note were neither unusual nor fixed as would be required to qualify him for a downward deviation under the Rule.

Specifically, Mother points to language in the note stating that it has no fixed payment amount and no fixed payment dates, but that, instead, Father may determine the payments "from time to time." R.R. 477a, ¶ 2; RR 361a, at 112: 17-19. Father counters with reference to the April 1, 2021 maturity date of the Note, but Mother directs our attention to the related provision stating "the maturity of this Promissory Note, or any payment due hereunder, may be extended at any time or from time to time without releasing, discharging, or affecting the liability of such party." *Id*.

- 18 -

Father's own testimony was that from his monthly income he pays himself $10,000, gives another $10,000 for taxes, and pays the remainder to his business partner, with half going toward repayment of the loan and half to taxes. As his income has risen every year and far exceeded $600,000 in both 2017 and 2018, the repayment plan Father described would have enabled him to pay over $150,000 to his partner in repayment of the loan in each of those years alone. We find such a loan repayment obligation, representing roughly 25% of Father's income[4] and having a projected pay-off date of under 7 years from the time the note was executed, is hardly "unusual" by contemporary borrowing standards. For this reason, alone, does Father's loan fail to qualify as a fixed *and* unusual obligation justifying a downward deviation, let alone a deviation completely eliminating Father's support obligation.

Finally, we address Mother's contention that the court erroneously included Father's alimony payment of $800 in Mother's income, but then also identified the payment as one of J.Z.W.'s monthly assets, which, we agree, would have unduly lowered Father's support obligation by both increasing Mother's income in the parental income analysis and giving Father a dollar-for-dollar reduction from his prescribed support obligation reflecting J.Z.W.'s direct support payment. Our review of the record, however, shows that the

_____

[4] There may be instances where a loan obligation amounting to 25% of the obligor's income represents such a significant burden, particularly where the obligor is of modest means, that the loan qualifies as unusual and, thus, warrants a downward deviation. The case *sub judice*, however, does not present such an instance.

Conference Officer and the trial court did not include the alimony payment in their calculations of Mother's income. **See** TCO, at 11-12. Therefore, we reject Mother's assertion that Father's $800 payment was double-counted to his undue advantage.

Turning to Father's cross-appeal, we address his assertion that the doctrines of collateral and equitable estoppel bar Mother from presenting her claim for modification of the child support order for J.Z.W., as he contends Mother is improperly attempting to relitigate child support for J.Z.W. after the parties entered the MSA, which set Father's fixed alimony payment for J.Z.W.'s benefit. Our review of the record, party briefs, and the trial court's opinion lead us to discern no merit to Father's claim. In this regard, we adopt the rationale expressed in the trial court's cogent and comprehensive Pa.R.A.P. 1925(a) Opinion, at pp. 15-18, to the extent it finds the MSA did not bar subsequent review of Father's continuing obligation to support J.Z.W.

Specifically, the court found that although J.Z.W. had been removed from the support case in the April 6, 2011 Order of the Court entered in recognition of the MSA, subsequent orders indicated that J.Z.W. does require support. Estoppel did not apply to preclude court review of Mother's petition, the court reasoned, where the facts established J.Z.W.'s continued need for support and the static nature of the MSA could very well work to J.Z.W.'s prejudice:

> The "[r]ight to support is a right of the child, not the mother or father, and it cannot be bargained away before conception any more than it can be bargained away after birth, nor can it be

extinguished by principles of estoppel." **Kesler v. Weniger**, 744 A.2d 794 (Pa. Super. 2000). Parents are permitted to make agreements regarding child support, as long as the provisions are fair and reasonable, made without fraud or coercion, and do not prejudice the welfare of the children, but they do not have the power to bargain away the rights of their children. **Kraisinger v. Kraisinger**, 928 A.2d 333 (Pa. Super. 2007). . . . "When a child support agreement between spouses gives less than required or less than can be given to provide for the best interest of the children, it falls under the jurisdiction of the court's wide and necessary powers to provide for that best interest; the parties' bargain is at best advisory to the court and swings on the tides of the necessity that the children be provided for." **Id**., *see also*, **Gaster v. Gaster**, 703 A.2d 513 (Pa. Super. 1997).

. . .

The plain, unambiguous language of the MSA states that flow of support to J.Z.W. is non-modifiable and can be terminated prior to the end of J.Z.W.'s life under certain conditions which have no nexus to the support matter (*i.e.*, Mother's remarriage or cohabitation). Furthermore, the amount is non-modifiable, which is potentially prejudicial to J.Z.W. if his reasonable needs change such that additional financial support is warranted. Thus under a variety of potential scenarios, J.Z.W. could be substantially prejudiced if his access to support from both of his parents is terminated.

Trial Court Opinion, at 16-17, 18.

The court also found Father did not establish that he relied to his detriment on the negotiated alimony provision in the MSA when entering into his agreement to buy into the Ophthalmic surgery practice:

In **Style v. Shaub**, **supra**, the "[d]octrine of equitable estoppel did not bar former wife from filing new request for child support for adult child after pre-majority child support order was properly terminated; there was no detrimental reliance on part of former husband, the obligor, on termination of original order. See also, Pa.R.C.P. No. 1910.19(e). . . . [Father] maintains that the MSA should govern the support matter exclusively and the dismissal of the support case should be affirmed on this basis. While Father's

assertion that he entered into business agreements in reliance upon the terms of the MSA is credible, he has not convinced [the trial court] that he relied to his detriment in doing so.

Trial Court Opinion, at 17.

To the extent that the court recognized the parties' MSA does not, under the facts, preclude a review of Father's obligation to support J.Z.W., we concur. Accordingly, we discern no error with the trial court's decision denying Father's claim for relief on grounds of estoppel.

For the foregoing reasons, we vacate the support order entered below and remand for a recalculation of Father's child support obligations to J.Z.W. consistent with the present decision. Order denying Father's motion to bar Mother's petitions on the basis of collateral estoppel or equitable estoppel is affirmed. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/18/2020

- 22 -