J-A23002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CHRISTOPHER B. YOUNG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARBY B. HORNER | : | No. 1454 MDA 2021 |

Appeal from the Order Entered October 12, 2021
In the Court of Common Pleas of Lancaster County Domestic Relations at
No(s):  2021-00990,
PACSES No. 246116846

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 25, 2023**

Christopher B. Young ("Father") appeals *pro se* from the order affirming the trial court's previous dismissal of his complaint for support.  We affirm.

In June 2021, Father filed a complaint for support against Darby B. Horner ("Mother") as to their sole child, R.H., born in February 2017.  Around the time of filing, Father and Mother split custody evenly on an alternating weekly basis.  With regards to the complaint for support, a conference was held but no agreement reached.  The conference officer recommended an order dismissing the complaint without prejudice because "[t]he guidelines do not warrant a monthly support obligation in consideration of the 50/50% custody arrangement and economic parity existing."  Order, 7/16/21.  The trial court entered the recommended order.

_____

[*] Former Justice specially assigned to the Superior Court.

Father filed a request for a hearing *de novo* on the basis that there was no parity of income. On September 16, 2021, the trial court held the requested *de novo* hearing. Father and Mother testified to their respective incomes as of the time of the hearing, which had changed from the time of the conference, and submitted paystubs in support thereof. Specifically, Father testified that he accepted a part-time management position with the United Parcel Service, which had a cap of twenty-seven and one-half hours per week, in an effort to reduce his hours to be available to care for R.H. The position paid $25.30 per hour. *See* N.T., 9/16/21, at 3-5, 11. Mother testified that she earned $30 per hour as an employee of Aveanna Healthcare, where she worked thirty-two hours per week. *Id*. at 12. She further explained that she was no longer receiving any COVID-pay, had worked fewer hours in the summer when R.H. was not at preschool because the parties could not agree on a daycare at the time, and was a full-time college student. *Id*. at 13-16. Both parties provided proof of daycare and preschool expenses. At the conclusion of the hearing, Father sought a deviation from the guidelines, based on "other income in the household" from Mother's live-in fiancé. *See* Pa.R.C.P. 1910.16-5(b)(3).

The trial court took the matter under advisement. On October 12, 2021, the court entered an order dismissing Father's appeal and ratifying and confirming its July 16, 2021 order as a final order. *See* Order, 10/21/21. Father filed a timely notice of appeal to this Court. Both Father and the trial

court complied with Pa.R.A.P. 1925. Father culled his Rule 1925(b) statement down to two issues for our consideration:

> I. Whether the trial court erred in ratifying the domestic relations conference order . . ., without explanation when the facts and evidence presented at the conference differed from those presented at the *de novo* hearing.
>
> II. Whether the trial court erred when it failed to consider and provide an upward deviation for "other income in the household," pursuant to Pa.R.C.P. 1910.16-5(b)(3).

Father's brief at 4 (capitalization altered).

Our standard of review for appeals regarding child support orders is whether there was an abuse of discretion. *See E.R.L. v. C.K.L.*, 126 A.3d 1004, 1007 (Pa.Super. 2015). "[T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Id.* (citation omitted). Moreover, "[a]n abuse of discretion is [n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." *J.P.D. v. W.E.D.*, 114 A.3d 887, 889 (Pa.Super. 2015).

Additionally, we adhere to the following principles whenever a trial court sits as the finder of fact in a support matter:

> [This Court] must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this

Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.

When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented. This Court is not free to usurp the trial court's duty as the finder of fact.

*M.E.W. v. W.L.W.*, 240 A.3d 626, 634 (Pa.Super. 2020) (cleaned up).

At the outset, we observe that Mother asked this Court to find Father's claims waived and dismiss his appeal for failure to develop any legal argument in his brief. *See* Mother's brief at 7-8. Specifically, she assails Father's argument section, which consists of two legal citations: 23 Pa.C.S. § 4322(a) and Pa.R.C.P. 1910.16-5(b)(3). *See* Father's brief at 17-19, 21-22. His brief lacks any citation to case law. Instead, Father argues the facts that he believes the trial court should have found.

This Court has held, pursuant to Pa.R.A.P. 2119(a), that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) (cleaned up). Father's status as a *pro se* litigant does not excuse him from adherence to the Rules of Appellate Procedure. *See S.S. v. T.J.*, 212 A.3d 1026, 1032 (Pa.Super. 2019). While we do not condone the paltry nature of Father's arguments, we are nonetheless able to ascertain Father's issues on appeal. Accordingly, we decline to find waiver and will address Father's issues on the merits.

Turning to Father's first issue, the heading for this argument states that the court erred in ratifying the recommended order, which was produced following the conference, because the parties' incomes had changed by the time of the *de novo* hearing, and because the September 22, 2021 Calculated Guideline History Report ("Guideline Report") called for a monthly obligation.[1] ***See*** Father's brief at 10. He further argues that the trial court miscalculated the earnings of Father and Mother and, as a result, erred in deciding not to award support to Father. ***See id***. at 12-18.

At the *de novo* hearing, Father testified that he worked a maximum of twenty-seven and one-half hours per week in his new management position and that he earned $25.30 per hour. ***See*** N.T. 9/16/21, at 3-4, 11. He

---

[1] The Guideline Report, which appears in the reproduced record, was not included in the certified record. ***See*** RR8-RR15 (Calculated Guideline History Report, 9/22/21). It is well-settled that "[t]his Court may review and consider only items which have been duly certified in the record on appeal" and "a document not filed of record does not become part of the certified record by merely making a reproduction and placing that reproduction in the reproduced record." ***Rosselli v. Rosselli***, 750 A.2d 355, 359 (Pa.Super. 2000) (citations omitted). However, "where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it." ***Commonwealth v. Holston***, 211 A.3d 1264, 1276 (Pa.Super. 2019) (*en banc*) (citations omitted). Instantly, the Guideline Report is referenced by Father, Mother, and the trial court, and there is no dispute as to the authenticity of the Guideline Report included in the reproduced record. Thus, to avoid delay, we consider the September 22, 2021 Guideline Report included in the reproduced record.

We note that this leeway does **not** extend to the Calculated Guideline History Report pertaining to the July conference, which Father appended to his reply brief. Those calculations are irrelevant to the issues on appeal, were not included in the certified or reproduced record, and are not undisputed. As they are entirely *dehors* the record, we do not consider them.

submitted pay stubs, which indicated a significant fluctuation in the number of hours worked on a weekly basis, all of which exceeded the alleged twenty-seven-and-one-half-hour cap for weeks that he actually worked:

- 7/11/21-7/17/21:  31.57 hours paid at a lower rate of $23.00 per hour (including 0.32 hours of overtime paid at $34.50)

- 7/25/21-7/31/21:  0 hours

- 8/1/21-8/7/21:  39.96 hours (including 0.93 hours of overtime paid at $37.95)

- 8/8/21-8/14/21:  37.68 hours

- 8/15/21-8/21/21:  44.11 hours worked (including 4.47 hours of overtime paid at $37.95 per hour and 1.9 hours of double time paid at $50.60 per hour)

- 8/22/21-8/28/21:   0 hours worked (paid for 27.5 hours of vacation)

- 8/29/21-9/4/21:  28.03 hours

*See* Father's Exhibit 1.

Mother testified that she earned $30 per hour and had worked thirty-five to forty hours per week prior to summer, approximately twenty-four hours per week in the summer, and had just recently been able to increase her hours to thirty-two hours per week.  *See* N.T. 9/16/21, at 12-14.  Mother supplied pay stubs that covered the same period as Father's pay stubs and corroborated her recently-increased work hours as follows:

- 7/11/21-7/17/21:  8.08 hours

- 7/18/21-7/24/21:  0 hours

- 7/25/21-7/31/21:  8.1 hours

- 8/1/21-8/7/21:  24.27 hours

- 8/8/21-8/14/21:  7.88 hours

- 8/22/21-8/28/21:  32.27 hours

- 8/29/21-9/4/21:  0 hours

***See*** Mother's Exhibit 5.

In his brief, Father offered the following calculations as to the parties' respective gross monthly incomes based on his interpretation of the testimony at the *de novo* hearing. Regarding Father, he worked twenty-seven and one-half hours per week at a rate of $25.30, which he calculates to $3,014.92 per month. ***See*** Father's brief at 12. As to Mother, he contends that she worked thirty-seven and one-half hours per week at a rate of $30 per hour, for a monthly income of $4,875.00. ***Id***. at 12, 14. Thus, Father contends that Mother's gross income exceeded his by $1,860.08.

The trial court did not use the same calculations as Father. Instead, the court utilized the Guideline Report in calculating the parties' net incomes and corresponding support obligations. To wit, the Guideline Report showed that the court utilized a monthly gross income of $3,920.27 for Father based on an average work week of 35.76 hours. As to Mother, the court applied a monthly gross income of $4,311.88, which was based upon Mother working 33.17 hours per week. Pursuant to these calculations, the Mother-to-Father income ratio was 52.78% to 47.22%. The court explained that it "utilized what the parties are currently doing as the status quo because both are working a similar number of hours with a similar hourly pay[.]" Trial Court

Opinion, 1/4/22, at 6. After considering insurance deductions and payments for daycare and preschool,[2] the court found that the difference in remaining monthly child support amounted to "$44.30 per month" pursuant to the Guideline Report and dismissed the appeal "because the guidelines d[id] not warrant a significant support obligation." *Id*. at 4.

Father argues that because the trial court assessed Mother's income solely on her testimony, the court should have done the same for Father. *See* Father's reply brief at 9. However, upon review, we conclude that the trial court's calculations are supported by the record. Despite Father's testimony that he only worked twenty-seven and one-half hours per week, the pay stubs bore out that, on the weeks Father worked, he worked an average of 36.27 hours. The court credited the pay stubs over Father's self-serving testimony in determining Father's income at a rate of 35.76 hours per week, as it was permitted to do. *See* Trial Court Opinion, 1/4/22, at 3 (noting that it found Father's explanation for his change in employment "not credible"). Mother, on the other hand, testified that she was working **more** hours at the time of the *do novo* hearing than she had during the summer months reflected in the pay stubs, and the court credited that testimony.

Father's request for this Court to reweigh the evidence is to no avail, as we may not "usurp the trial court's duty as the finder of fact." *M.E.W.*, *supra*

---

[2] The exhibits presented at the *de novo* hearing demonstrated that Mother paid $400 monthly for daycare, while Father paid $280 monthly, for eight months, for preschool. *See* Mother's Exhibit 9; Father's Exhibit 4.

at 634 (cleaned up). The court emphasized that "because of the parties' 50/50 equal custody arrangement, what either parent does in terms of employment is either to his or her own benefit or detriment financially at this time." *Id*. at 6. The court stated that it would consider a new order of support if there was an involuntary change in the financial situation of either parent, significant increase in income, or unusually large and necessary expenses for R.H. *Id*. at 6-7. However, the court found that Father's change in employment and reduced hours were "self-inflicted" and "not enough to warrant support from [Mother]." *Id*. at 4. Although the basis for the calculations changed from the time of the conference to the time of the *de novo* hearing, the parity and the custody split remained the same. Accordingly, upon review of the record, we discern no abuse of discretion in the trial court's ratification of the earlier order dismissing Father's complaint for support.

In his remaining issue, Father argues that the trial court erred in failing to deviate from the guidelines based on Mother's purported other household income. *See* Father's brief at 18-22. As refined in his reply brief, Father claims that the "issue is that the trial court failed to even 'consider' Father's requested deviation because no facts for consideration were even placed on the record." Father's reply brief at 10.

The Rules of Civil Procedure "make clear that the amount of support as determined from the support guidelines is presumed to be the appropriate amount of support[.]" *Ileiwat v. Labadi*, 233 A.3d 853, 861 (Pa.Super. 2020) (cleaned up). Thus, "any deviation must be determined through

application of the rules, which set forth the only factors that a trier of fact may consider in determining whether to deviate." ***Id***. (cleaned up).  Rule 1910.16-5 governs deviations in child support orders:

**(a) Deviation.**

(1) The trier-of-fact may deviate from the basic child support, spousal support, or alimony *pendente lite* obligation.

(2) If the trier-of-fact determines a deviation is appropriate based on the factors in subdivision (b), the trier-of-fact shall specify on the record or in writing:

> (i) the calculated basic child support, spousal support, or alimony *pendente lite* obligation;
>
> (ii) the reason for the deviation;
>
> (iii) the findings of fact justifying the deviation;
>
> (iv) the deviation amount; and
>
> (v) in a spousal support or an alimony *pendente lite* action, the obligation's duration.

**(b) Factors.**  In deciding whether to deviate from the basic child support, spousal support, or alimony *pendente lite* obligation, the trier-of-fact shall consider:

(1) unusual needs and unusual fixed obligations;

(2) a party's other support obligations;

(3) other household income;

(4) the child's age;

(5) the parties' relative assets and liabilities;

(6) medical expenses not covered by insurance;

(7) the parties' and the child's standard of living;

(8) in a spousal support or alimony *pendente lite* case, the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the child's best interest.

Pa.R.C.P. 1910.16-5. Finally, this Court has held that a trial "court has reasonable discretion to deviate from the guidelines if it appears to be necessary and the record supports the deviation." ***Ricco v. Novitski***, 874 A.2d 75, 82 (Pa.Super. 2005).

By way of background, the following exchange occurred at the *de novo* hearing regarding the requested deviation:

[Father]: I have another argument.

The Court: Go ahead.

[Father]: In March of 2021, [Mother] left the relationship and moved in with her current fiancé. Our child refers to him as the stepfather and his stepchildren as her stepsisters. He is party to our custody order now that is being amended where I will be communicating with him pertaining to [R.H.] He's the owner of a successful IT company named JMJ Wireless.

The Court: Really the question isn't him or his income. The question is what expenses [Mother] is paying on a regular basis out of her pay and perhaps what he is paying, but what he makes is not relevant and it isn't anything that I can even take into consideration.

[Father]: I understand that, sir. I'm just trying to lay the foundation for PA Rule of Civil Procedure 1910.16-5(b)(3) factors which states in deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider other income in the household.

- 11 -

With that said, sir –

The Court: Nobody has asked me for a deviation.

[Father]: That's what I'm doing now. I'm trying to lay the foundation to do that.

The Court: We have five more minutes.

[Father]: What would you like me to do, Your Honor?

The Court: I can't advise you as to how to try this case. It is up to you.

[Father]: Sir, if I'm going to run out of time, then I will –

The Court: It's pretty simple. I'll ask the question.

[Mother], you are residing with someone else?

[Mother]: Correct.

The Court: That is employed?

[Mother]: Correct.

The Court: What is your understanding as to who is paying expenses?

[Mother]: My entire pay goes into a joint account. I pay for half of the bills, which are much more than what I was paying prior to living with him.

The Court: What does that mean, the bills were much more.

[Mother]: The bills now are more than what I was paying. We live in a larger house. We just bought a larger car for the children, the daycare. There's more bills.

The Court: So you both are putting your income into an account and paying the bills out of that account?

[Mother]: Correct.

The Court: Are there savings that result from that each month?

[Mother]: What did you say?

The Court: Are there savings that result from the joint income being put together?

[Mother]:     If there are savings, it's on his end – on my fiancé's end.

[Father]:     Your Honor, may I interject?

[Mother]:     He handles all of our finances.

The Court:   All right. Do you have questions about that?

[Father]:     I do. [Mother] has indicated that she pays half the bills and they are much more than what she had previously paid, and if she's paying more money for bills and it's going into a joint account between the both of them and he is the only one who is saving money, then I simply do not understand how [Mother] has been able to purchase a brand new car on part time hours as she is stating. I don't know how she has been able to go on vacation to Myrtle Beach. I don't know how, sir, she has been utilizing an in-home nanny over the course of the summer where she was paying bi-weekly and she was only working 24 hours a week.

In order to be able to do that, Your Honor, there must be another flow of income.

The Court:   There very well may be and it's obviously – I deal with this all the time. We cannot include his income.

[Father]:     I'm not asking for that.

The Court:   I understand what your argument is. I'm not buying it at this point.

[Father]:     Okay. Thank you. I appreciate the consideration.

N.T., 9/16/21, at 38-42 (capitalization altered).

In its opinion, the court stated that it considered the impact of the fiancé's income on Mother's expenses. *See* Trial Court Opinion, 1/4/22, at 10-11. Our review reveals that the trial court considered the requested deviation and rejected it because it was not necessary or supported by the record. We do not discern an abuse of discretion. Mother, who at the time of

the hearing earned slightly more than Father, testified that all her earnings are used to cover her portion of her family's expenses. That her fiancé supplemented her ability to pay for their car, vacation, or nanny does not impact Mother's child support obligation as to R.H. Stated succinctly, Father has attempted to recast the court's rejection of his deviation request as the court failing to consider his deviation request. In the words of the trial court, we are "not buying it[.]" N.T., 9/16/21, at 42.

Based on the foregoing, we discern no abuse of discretion in the trial court's conclusion that, following the *de novo* hearing, support was not warranted in this case where the parties had a parity of income and shared custody evenly. Accordingly, we affirm the order of the trial court ratifying its original order dismissing Father's complaint for support.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2023