J-A23044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JULIE K. GILBERT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW J. FENSTERMACHER | : | |
| | : | |
| Appellant | : | No. 194 MDA 2024 |

Appeal from the Order Entered January 22, 2024
In the Court of Common Pleas of Lancaster County
Domestic Relations at No: 2021-01725,
PACSES No. 773301155

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:            **FILED JANUARY 13, 2025**

Andrew J. Fenstermacher ("Father") appeals from the January 22, 2024, order filed in the Court of Common Pleas of Lancaster County that denied modification of child support for his minor children, E.M.F. and E.L.F. Upon review, we affirm.

On November 1, 2021, Julie K. Gilbert ("Mother") filed for child support against Father. After a domestic relations conference, Father was ordered to pay Mother $777.92 per month for two minor children. *See* Support Order, 12/13/21. The order was based on Father's net monthly income of $9,823.29 and Mother's net monthly income of $6,102.69. *See id.* Father's income was determined by his 2020 tax return. *See id.* Father requested a *de novo* hearing; however, prior to the scheduled hearing, the parties reached an agreement wherein Father paid Mother $779.92 per month until February 1,

2022, and thereafter his obligation increased to $1,000 per month. **See** Stipulation, 2/17/22.

Mother petitioned to increase child support on June 1, 2022, asserting that Father's 2021 tax return indicated a substantial increase of his income from 2020. Following a domestic relations conference, Father was ordered to pay Mother $2,197.89 per month in child support. **See** Support Order, 7/14/22. The order was based on Father's net monthly income of $14,414.59, and Mother's net monthly income of $6,290.58. **See id.** Father's income was determined by his 2021 tax returns. **See id.**

On May 15, 2023, Father petitioned to modify his support obligation due to a "[s]ignificant decrease in [his] net monthly income." Petition to Modify, 5/15/23, at 2. Following a conference, the domestic relations office determined that, based on Father's 2022 tax return, the guidelines warranted an *increase* of support to $2,403.68 a month. **See** Summary of Trier of Fact, 8/25/23, at 2. However, based on Father's representation that his 2023 earnings would be significantly lower, the domestic relations office did not recommend modification of the support obligation. **See id.** at 3.

Father requested a *de novo* hearing, which was held on January 18, 2024. "Father's primary concern, expressed at the hearing, was that domestic relations based its assessment on his 2022 gross income of $264,000.00, [instead of his 2023 income]. He argued that 2023 had been a more challenging year financially, thus his income was lower and should be considered instead." Trial Court Opinion, 4/8/24, at 4. Father is an

independent contractor working as a realtor for RE/MAX Pinnacle, and testified regarding his income:

[Father] holds his real estate license with RE/MAX Pinnacle and was employed in 2022. Additionally, Father owns 10 rental properties and derives income from real estate commissions, rental properties, and shares in a title company. To support his claim, Father presented a final commission statement for 2023 (labeled D-1), indicating a total gross commission of $149,146.59, lower than his 2022 earnings. He also testified to earning just over $250,000 for the year ending December 2023, with one closing in January 2024 bringing in a commission of $5,000.

Father further provided a breakdown of income and expenses for his 10 rental properties (Exhibit D-2), revealing a net profit from real estate commissions in 2023 of $121,107 after deducing business expenses, including a significant loss of $30,210 for the property at 1601 Victory Road due to flood-related expenses. The collective net loss for all rental properties in 2023 amounted to $5,481, which Father considered atypical. Despite being unable to recall his net profit for 2022, Father submitted his 2021 and 2022 tax returns (Exhibits D-3 and D-4) as evidence.

Father attributed the substantial drop in income from 2022 to 2023 to various factors, notably the depletion of exclusive listings in a neighborhood called Stonehenge Reserve, resulting in fewer sale listings overall. He also mentioned receiving $3,620 from the title company in 2023 and currently holding two listings. As for his tax return for 2023, Father planned to file it in April or May 2024 and was undecided about filing jointly with his new wife. During the hearing, Father did not present a complete 2023 profit and loss statement, but only offering instead income information from January 1, 2023, to July 7, 2023 (Exhibit D-2). Additionally, though Father mentioned an expected additional child, the birth had not occurred, and the date was unknown, so it could not be considered as an additional financial obligation at that time.

Regarding health insurance coverage for the children, Father testified that his new wife, Maria Fenstermacher, could provide coverage through her employer, with the switch planned for 2024. However, there was uncertainty about the actual enrollment costs and benefits. Father's only supporting documentation regarding

the new health insurance was Exhibit 5, a typed statement of
Father, as opposed to verification of an employer or health
insurance provider.

*Id.* at 4-5 (citations to record omitted). Thereafter, the trial court denied
Father's request for modification. This timely appeal followed. Both Appellant
and the trial court complied with Pa.R.A.P. 1925.

Father raises two issues for our review:

1. Did the trial court err and abuse its discretion in failing to apply
   the Pennsylvania Child Support Guidelines to Appellant's 2023
   income in denying Appellant's motion for modification of the
   existing child support order?

2. Did the trial court err and abuse its discretion in failing to
   consider Appellant assuming financial responsibility for the
   children's health insurance through his wife's employer in
   denying Appellant's motion for modification of the existing child
   support order?

Father's Brief, at 7.

Our standard of review of child support orders is well-settled:

When evaluating a support order, this Court may only reverse the
trial court's determination where the order cannot be sustained on
any valid ground. We will not interfere with the broad discretion
afforded the trial court absent an abuse of discretion or insufficient
evidence to sustain the support order. An abuse of discretion is
not merely an error of judgment; if, in reaching a conclusion, the
court overrides or misapplies the law, or the judgment exercised
is shown by the record to be either manifestly unreasonable or the
product of partiality, prejudice, bias or ill will, discretion has been
abused.

\* \* \* \*

An award of support, once in effect, may be modified *via* petition
at any time, provided that the petitioning party demonstrates a
material and substantial change in their circumstances warranting
a modification. The burden of demonstrating a material and
substantial change rests with the moving party, and the
determination of whether such change has occurred in the

- 4 -

circumstances of the moving party rests within the trial court's discretion.

*Summers v. Summers*, 35 A.3d 786, 788-89 (Pa. Super. 2012) (quotation marks and citations omitted). Furthermore, this Court

> must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.
>
> When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to believe all, part, or none of the evidence presented. This Court is now free to usurp the trial court's duty as the finder of fact.

*M.E.W. v. W.L.W.*, 240 A.3d 626, 634 (Pa. Super. 2020) (citation omitted).

Father first claims that the domestic relations office, and later the trial court, erred in calculating his child support obligation based on his 2022 tax return, and not his 2023 earnings. *See* Father's Brief, at 14. To support this claim, he asserts that the trial court (1) mischaracterized his testimony and exhibits as providing only a partial summary of his 2023 income; and (2) disregarded his testimony and exhibit regarding the profit and loss summary of his rental properties for 2023. *See id.* at 14-15. In essence, he challenges the trial court's credibility and weight of the evidence determinations.

The trial court found that the testimony and evidence presented during the January 18, 2024 *de novo* hearing was not "sufficient or complete enough to establish a reduced earning capacity for Father, thereby warranting a

reduction of his net monthly income." Trial Court Opinion, 4/8/24, at 6-7. The court explained:

> Based on the provided information and the ruling in [**Commonwealth ex. rel. Banks v. Banks**, 478 A.2d 1387 (Pa. Super. 1984)][1], it is clear that Father's evidence fell short in meeting the requirements for assessing child support . . ., particularly when dealing with self-employment or commission-based income. The ruling in **Banks** emphasizes the challenge of accurately determining actual income in such cases, highlighting the limitations of relying solely on income tax returns, especially for self-employed individuals. However, Father failed to provide a complete profit and loss statement for the relevant period, which is essential for a comprehensive assessment of income. While Father did provide some income for *part* of 2023, it was limited to a statement of total income from January 1, 2023, through July 7, 2023. This partial information is insufficient for a thorough evaluation of [Father's] earning capacity, particularly considering the complexities involved in assessing self-employment or commission-based income. Therefore, given the inadequacy of the information presented, [the trial court] concluded that Father's submission was not enough to facilitate a decrease of his child support obligation.

**Id.** at 7.

This finding is supported by the record. Father is a realtor, and his income is commission-based. Father also receives rental income from approximately 10 rental properties and dividends from shares in a title company, Regal Abstract. N.T. Hearing, 1/18/24, at 6, 17. During the *de novo* hearing, Father claimed that his income for 2023 decreased by approximately $100,000 due to various factors. **Id.** at 7. He explained that

---

[1] The **Banks** court emphasized "the careful scrutiny that must be employed in evaluating [an] allegation of reduced income due to [a party's] self-employment and earning of income on a commission basis." **Banks**, 478 A.2d at 1389.

in 2022, he was the exclusive listing agent for the Stonehenge Reserve and Essex Court neighborhoods. *Id.* at 16. However, there were no listings at Stonehenge Reserve in 2023 because all the properties sold. *Id.* Likewise, Essex Court only had a few lots remaining and chose not to list them with a realtor. *Id.* at 17. Father also explained that the total number of real estate listings was significantly lower in 2023 than in 2022, and he received fewer leads from his mother, another realtor. *Id.*

In addition to his own testimony, Father submitted several documents to support his claim of decreased income: (1) commission statements from RE/MAX Pinnacle dated December 11, 2023; (2) a self-prepared document titled Total Income (1/1/23 – 7/7/23) ("total income exhibit"); (3) his 2021 tax return; and (4) his 2022 tax return. His 2023 tax return was not completed at the time of the hearing.

The total income exhibit includes a detailed breakdown of Father's real estate and rental property income, as well as a summary of his total income.[2] It was not prepared by an accountant. *Id.* at 23. Instead, Father and his wife created the total income exhibit. *Id.* The document indicates that his net income for 2023 was $119,246.

_____

[2] Although the document indicates that it represents Father's income from January to July 2023, the exhibit shows that Father's real estate income for that period was $149,147, which matched his year-to-date commissions from the December 11, 2023 RE/MAX Pinnacle commission statement (Exhibit 2). There was no testimony regarding this discrepancy. Thus, Father's own exhibit contained conflicting information that was not clarified during the *de novo* hearing.

According to the exhibit, Father received $149,147 in gross real estate commissions, less expenses, for a net profit of $121,107. For the rental properties, Father reported a net loss of $5,481. N.T. Hearing, 1/18/24, at 12. The exhibit included a chart indicating the address, rental income, taxes, mortgage interest, insurance, HOA payment, and expenses. **See** Father's Exhibit D-2. Father explained that his Florida rental property sustained damage from flooding sometime in 2022 and has been vacant ever since. **Id.** at 10-11. There was a significant expense ($16,700) for that property because the bulk of the repairs were done in 2023. **Id.** at 11. Additionally, Father was forced to evict a tenant from another property (2243 Old Meadow Court) who caused extensive damage. **Id.** There was another significant expense ($33,907) for that property as Father completed the repairs in 2023. **Id.**

However, Father did not provide any supporting documentation to verify the numbers on the total income exhibit, such as bank statements, receipts for expenses, real estate tax documents for his rental properties, etc. As a result, the trial court determined that the testimony and exhibits presented by Father were not "sufficient or complete enough" to warrant a decrease in his child support obligation. **See** Trial Court Opinion, 4/8/24, at 6. As the trier of fact, the trial court was free to believe all, part, or none of the testimony and exhibits. **See M.E.W., supra.** Thus, we discern no abuse of discretion in this finding, and Father is not entitled to relief on this claim.

Father's second claim is that the trial court abused its discretion by failing to consider that "the parties reached an agreement that Appellant would assume financial responsibility for the children's healthcare coverage by enrolling them in coverage through his wife's employer effective February 2024." Appellant's Brief, at 16.

The trial court explained:

The reality is that as of the time of the hearing, and at all relevant times leading up to the hearing, Mother was paying for the health insurance for the children. Therefore, no change for that period of time is warranted as Father had not actually secured health insurance coverage at any time relevant to this appeal. Additionally, Father only provided a typed statement prepared by himself as proof of any would-be coverage. Father did not provide any actual verification of costs from the employer's health insurance company or other reliable source. Father also did not provide any evidence of if or when the children would be enrolled or as to what the new insurance would cover so that a quality of coverage comparison could be made to that which Mother was already providing. Based on the information provided by Father and [Pa.R.Civ.P. 1910.16-6(b)(1)(iii)], it is further evident that Father's submissions regarding the coverage of medical expenses by his new wife's insurance policy does not fulfill the requirements outlined in the statute.

Trial Court Opinion, 4/8/24, at 8.

We discern no abuse of discretion. At the time of the *de novo* hearing, Mother continued to provide health insurance for the children. N.T. Hearing, 1/18/24, at 15. Rule 1910.16-6 requires that "[a] health insurance premium allocated between the parties shall also include health insurance that is **provided and paid** by a third-party residence of a party's household (*e.g.*, step-parent) for a child who is the subject of the support order." Pa.R.Civ.P.

1910.16-6(b)(1)(iii) (emphasis added). Neither Father nor his wife provided or paid for the children's health insurance at the time of the *de novo* hearing. Thus, the trial court did not abuse its discretion by declining to credit Father for providing the children's health insurance, and he is not entitled to relief on this claim.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/13/2025